# EXHIBIT 1

Clerk of the Superior Court
*** Electronically Filed ***
C. McWhorter, Deputy
8/22/2024 2:51:06 PM
Filing ID 18386275

Jason Ebe (ASB #017216)
Creighton P. Dixon (ASB #033298)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona  85004-2556
Telephone:  602.382.6000
E-Mail: jebe@swlaw.com
         cdixon@swlaw.com
*Attorneys for Plaintiff*

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| TRIMOD AILERON PROPERTY LLC, <br><br> Plaintiff, <br><br> v. <br><br> MODERNE CAPITAL PARTNERS LLC; MODERNE CAPITAL PARTNERS II, LLC a/k/a HYPHEN CAPITAL PARTNERS II, LLC; JARED BLACK AND JANE DOE BLACK; DAVID DEWAR AND JANE DOE DEWAR; LES LITWIN AND JANE DOE LITWIN; and JEFFREY STONE AND JANE DOE STONE, <br><br> Defendants. | No.  **CV2024-022920** <br><br> **COMPLAINT** <br><br> Commercial Court Assignment Requested |

Plaintiff Trimod Aileron Property LLC ("Plaintiff") for its complaint against Defendants Moderne Capital Partners LLC ("MCP"), Moderne Capital Partners II, LLC also known as Hyphen Capital Partners II, LLC ("MCP II"), Jared Black and Jane Doe Black, David Dewar and Jane Doe Dewar, Les Litwin and Jane Doe Litwin, and Jeffrey Stone and Jane Doe Stone (collectively, "Defendants"), states as follows:

**PARTIES, JURISDICTION, VENUE, AND TIER**

1. Plaintiff is and was, at all relevant times, a Delaware company authorized and doing business in Maricopa County, Arizona.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

2. Upon information and belief, Defendant MCP is and was, at all relevant times, a Delaware company conducting business in Arizona and has a principal address located at 1641 E. McDowell Road in Phoenix, Arizona.

3. Upon information and belief, Defendant MCP II is and was, at all relevant times, a Delaware company conducting business in Arizona and has a principal address located at 1641 E. McDowell Road in Phoenix, Arizona.

4. Jared Black is a Co-Manager and Co-CEO of Hyphen Capital Partners, LLC, and upon information and belief has the same role for MCP and MCP II. Jane Doe Black is a fictitious defendant named in the event Jared Black is married. At all times, Jared Black was acting on behalf of their marital community.

5. David Dewar is a Co-Manager and Co-CEO of Hyphen Capital Partners, LLC, and upon information and belief has the same role for MCP and MCP II. Jane Doe Dewar is a fictitious defendant named in the event David Dewar is married. At all times, David Dewar was acting on behalf of their marital community.

6. Les Litwin is a Co-Manager of Hyphen Capital Partners, LLC, and upon information and belief has the same role for MCP and MCP II. Jane Doe Litwin is a fictitious defendant named in the event Les Litwin is married. At all times, Les Litwin was acting on behalf of their marital community.

7. Jeffrey Stone is a Co-Manager of Hyphen Capital Partners, LLC, and upon information and belief has the same role for MCP and MCP II. Jane Doe Stone is a fictitious defendant named in the event Jeffrey Stone is married. At all times, Jeffrey Stone was acting on behalf of their marital community.

8. This Court has jurisdiction over Defendants pursuant to A.R.S. § 12-123 because Defendants conducted business and committed actions relevant to this action in Maricopa County, Arizona.

9. Venue is proper in this Court under A.R.S. § 12-401 because Defendants contracted in writing to perform an obligation, conducted business, and committed actions relevant to this action in Maricopa County, Arizona.

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

10.    Pursuant to Arizona Rules of Civil Procedure, Rule 26.2(c)(3), the Court should assign this case to Discovery Tier 3 because this action seeks damages over $300,000.

**GENERAL ALLEGATIONS**

11.    This action concerns the development and construction of an apartment complex at the northwest corner of 7th Avenue and the Loop 101 Freeway in Phoenix known as the "Amelia."

12.    MCP II and Plaintiff are parties to the Project Management Services Agreement (the "Agreement").  A copy of the Agreement is attached as Exhibit 1.

13.    Under the Agreement, MCP II was obligated to provide and perform, among other things, development services related to the Amelia.

14.    Pursuant to the Agreement at § 1.1, MCP II was to "perform all of the services, and in such phases, as are set forth in this Section 1, together with such other services in connection therewith as are customarily furnished as basic services in accordance with generally accepted project management practice."

15.    Pursuant to the Agreement at § 1.2, MCP II was obligated to provide its services "as expeditiously as is consistent with professional skill and care and the orderly progress of the Project and in accordance with the professional standard of care, skill and diligence customarily followed by project management professionals on projects of comparable scope and quality to the Project."

16.    This is a warranty or guarantee that MCP II would perform its professional services consistent with the applicable industry standard or otherwise with reasonable skill or care.

17.    Upon information and belief, on behalf of MCP II, MCP provided some or all of the services for Plaintiff described in the Agreement.

18.    Jared Black, Les Litwin, Jeffrey Stone, and David Dewar are managers or otherwise officers of Defendants and their acts, errors, or omissions are the cause of the acts attributable to the Defendants.

- 3 -

**MCP II DID NOT PERFORM ITS OBLIGATIONS UNDER THE AGREEMENT**

19.     MCP II did not perform as required by the Agreement.

20.     By way of illustration, pursuant to the Agreement at § 1.3(e), MCP II was obligated to "provide and maintain a competent, full-time management team on the [Amelia] site to arrange for the performance of the work in the most expeditious and economical manner consistent with good workmanship, sound business practices, and the best interests of [Plaintiff]."

21.     MCP II did not have a competent, full-time management team on site to arrange for the performance of the work in the most expeditious and economical manner consistent with good workmanship, sound business practices, and the best interests of Plaintiff.

22.     Pursuant to the Agreement at § 1.3(q), MCP II was obligated to "establish a comprehensive quality control and inspection program to assure that the Work is performed in accordance with the drawings, specifications, and other Contract Documents."

23.     MCP II did not have comprehensive quality control and inspection program to assure that the Work is performed in accordance with the drawings, specifications, and other Contract Documents.

24.     Pursuant to the same section, MCP II was "not authorized to change, revoke, alter, enlarge, relax or release any requirements of the Contract Documents or to approve or accept any portion of the Work not conforming with the requirements of the Contract Documents."

25.     MCP II approved or otherwise accepted work not conforming with the requirements of the Contract Documents.

26.     Pursuant to the Agreement at § 1.3(u), MCP II was obligated to document "Any changes to the Contract between [Plaintiff] and Contractor … by change orders which have been executed by [Plaintiff]."

27.     MCP II did not appropriately document changes to the Contract with the Contractor by way of Change Order.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

28.     Pursuant to the Agreement at § 1.3(ee), MCP II was obligated to "secure the warranties and similar submittals required by the Contract Documents for delivery to [Plaintiff]…"

29.     MCP II did not secure warranties required by the Contract Documents, including but not limited to waiving the flooring warranty.

30.     Pursuant to the Agreement at § 3.2, MCP II was obligated to perform its services "in a timely manner so as not to cause any delay … in accordance with the Project schedule set forth by [Plaintiff]."

31.     MCP II caused delay to the Amelia, as the project is still not complete and is more than a year behind schedule.

32.     MCP II failed to perform, at a minimum, its above obligations under §§ 1.1, 1.2, 1.3, and 3 of the Agreement.

**COUNT ONE**

**BREACH OF AGREEMENT – MCP II**

33.     Plaintiff incorporates by reference all prior allegations.

34.     The Agreement is a valid and enforceable contract.

35.     MCP II materially breached the Agreement by failing to perform its obligations under the Agreement §§ 1.1, 1.2, 1.3, and 3.

36.     Plaintiff has been damaged as a result of MCP II's breaches in an amount to be proven at trial.

37.     Plaintiff is entitled to recover its attorneys' fees and costs pursuant to the Agreement and A.R.S. §§ 12-341 and 12-341.01.

**COUNT TWO**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – MCP II**

38.     Plaintiff incorporates by reference all prior allegations.

39.     As with all contracts in Arizona, the Agreement included an implied covenant of good faith and fair dealing that no party to the Agreement would prevent another party

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

from receiving the benefits under the Agreement, which further implied a duty for MCP II to act fairly and in good faith.

40.    MCP II breached the covenant of good faith and fair dealing by, among other things, failing to provide sufficient and qualified personnel to perform its obligations, manage and ensure timely completion of the Amelia.

41.    Plaintiff has been damaged as a result of MCP II's breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

42.    Plaintiff is entitled to recover its attorneys' fees and costs pursuant to the Agreement and A.R.S. §§ 12-341 and 12-341.01.

## COUNT THREE

## NEGLIGENCE – MCP, JARED BLACK, DAVID DEWAR, LES LITWIN, AND JEFFREY STONE

43.    Plaintiff incorporates by reference all prior allegations.

44.    MCP, Jared Black, David Dewar, Les Litwin, and Jeffrey Stone owed Plaintiff a duty to perform their services and work with professional skill, care, and diligence.

45.    MCP, Jared Black, David Dewar, Les Litwin, and Jeffrey Stone failed to perform their services with professional skill, care, and diligence, thereby breaching their duty to Plaintiff, and causing Plaintiff to incur significant damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays this Court enter judgment as follows:

46.    For damages in favor of Plaintiff and against Defendants in an amount to be proven at trial;

47.    For reasonable attorneys' fees and costs pursuant to the Agreement and A.R.S. §§ 12-341 and 12-341.01, as well as any other applicable law;

48.    For pre- and post-judgment interest on such damages, fees, expenses, costs, and attorneys' fees to the maximum extent allowed by law; and

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

49.    For such further and other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues that can be heard by a jury.

DATED this 22nd day of August, 2024.

SNELL & WILMER L.L.P.

By: _____
Jason Ebe
Creighton P. Dixon
One East Washington St., Suite 2700
Phoenix, Arizona  85004-2556
*Attorneys for Plaintiff*

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona  85004-2556
602.382.6000

- 7 -

# **Exhibit 1**

## PROJECT MANAGEMENT SERVICES AGREEMENT

THIS PROJECT MANAGEMENT SERVICES AGREEMENT (this "**Agreement**"), dated as of March 1, 2022 is made and entered into by and between Trimod Aileron Property LLC, a Delaware limited liability company ("**Client**") whose address is c/o Triumph Properties Group, 9601 Wilshire Blvd., Suite 560, Beverly Hills, California 90210, and Moderne Capital Partners II, LLC, a Delaware limited liability company ("**Consultant**") whose address is 1641 East McDowell Road. Phoenix, Arizona 85085 with reference to the following facts:

### RECITALS

A.      Client is engaged in the construction of a residential apartment complex at the Northwest corner of 7th Avenue & Loop 101 Freeway, Phoenix, Arizona ("**Premises**") and Client, or its nominee, intends to construct a multi-residential apartment complex (the "**Project**"), and will require the project management services of Consultant;

B.      Consultant is duly licensed, qualified, knowledgeable and experienced in performing the project development and management services required by Client.  Consultant desires to perform said services, and Client desires to retain Consultant on the terms and conditions set forth in this Agreement;

C.      Client has retained MV&E Partners ("**Architect**") as the architect for the Project and intends to hire A.R. Mays Construction as general contractor ("**Contractor**") to construct the Project pursuant to the Construction Agreement (as hereinafter defined) between Client and Contractor; and

D.      Consultant may retain, as part of its Basic Services subconsultants (herein, collectively "**Subconsultants**") as may be required to perform full project management services as required hereby.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and promises herein contained, each of the parties hereto intending to be legally bound hereby agree as follows:

1.      **Basic Services of Consultant**.

1.1      **Basic Services**.  Consultant shall perform all of the services, and in such phases, as are set forth in this Section 1, together with such other services in connection therewith as are customarily furnished as basic services in accordance with generally accepted project management practice ("**Basic Services**").  Unless specifically provided otherwise herein, Basic Services shall exclude legal services required by the Project, including preparation of bid, proposal and construction contract documents.  When any of the Consultant's Basic Services are to be performed by Subconsultants to the Consultant, the selection of Subconsultants shall be subject to Client's prior written approval; provided that nothing contained herein shall be deemed to create any contractual relationship between Client and a Subconsultant so employed by Consultant.  Any such Subconsultants as may be required to enable Consultant to properly perform Consultant's Basic Services and Additional Services (as defined in Section 2 hereof) shall be employed at Consultant's own cost and expense.  Subconsultants shall be duly licensed in their respective fields of specialization.  Consultant shall be fully responsible to Client for the services rendered by such Subconsultants.  Client shall have the right to reject in Client's reasonable opinion any of Consultant's Subconsultants.  In such case Consultant shall terminate

- 1 -

the services of such rejected Subconsultant(s) and promptly obtain one or more suitable replacements.

1.2 **Independent Consultant**. Consultant is Client's independent professional consultant for the project management services provided under the terms of this Agreement. Consultant is responsible for methods and means used in performing all of the services under this Agreement, and is not an employee of Client. Consultant's services hereunder shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Project and in accordance with the professional standard of care, skill and diligence customarily followed by project management professionals on projects of comparable scope and quality to the Project. The signing of any drawing or approval of any document by the Client or any of Client's representatives or agents shall not relieve the Consultant from such liability as the Consultant might otherwise have for professional errors or omissions in the conduct of its obligations under this Agreement. Consultant shall have no authority to execute or enter into any contract, document or agreement on behalf of Client or otherwise bind Client except as expressly authorized herein or with the specific express written authorization of Client. Consultant shall perform the Basic Services and any Additional Services on the terms and conditions set forth in this Agreement in compliance with all legal requirements, and in performing such services, Consultant shall act in the best interest of Client in good faith. Consultant shall use commercially reasonable efforts to cause the work to be performed under the Construction Agreement ("**Work**") to be completed in a manner consistent with the Project schedule

1.3 **Development Phase; Construction Phase**.

(a) **Development Phase**. The development phase ("**Development Phase**") will consist of pre-construction coordination and evaluation concerning Project economics and budgets, design, costs, etc. to Owner, and coordinating the construction and development of the Project.

(b) **Construction Phase**. The construction phase ("**Construction Phase**") will commence on the date set forth in that certain Standard Form of Agreement Between Client and Contractor dated February 23, 2022 (the "**Construction Agreement**"), will end 60 days after final payment to the Contractor is made.

(c) **Cooperation with Architect**. Consultant shall provide administration of the Construction Agreement in cooperation with the Architect as set forth below.

(d) **Management Services**. Consultant shall provide administrative, management and related services as required to monitor the work of the Contractor and to coordinate the work of the Contractor with the activities and responsibilities of Consultant, the Client, and the Architect, as set forth in the Construction Agreement and the Contract Documents (as said term is defined in the Construction Agreement), as amended from time to time with the approval of the Client. The monitoring and coordination responsibilities of Consultant shall also apply to the furniture, fixture and equipment consultants and vendors for the Project, if any.

(e) **Project Communication**. Consultant shall schedule and conduct meetings, with Client and such other parties as Client may direct after consultation with Consultant, not less often than once per week to discuss such matters as procedures, progress and scheduling. Consultant shall prepare and promptly distribute detailed, complete and accurate written minutes of these meetings to the Client, Architect and Contractor. Consultant shall provide and maintain a competent, full-time management team on the Project site to arrange

- 2 -

for the performance of the work in the most expeditious and economical manner consistent with good workmanship, sound business practices, and the best interests of Client.  When necessary or appropriate or when requested by Client, Consultant shall conduct meetings at the Project site with Contractor and /or each subcontractor of Contractor ("**Subcontractor**") and Client. Consultant shall give Client reasonable notice of each meeting so that Client can arrange to have appropriate employees or agents of Client attend each such meeting.  Consultant shall also conduct coordination meetings with Contractor, Client and Architect. Consultant shall prepare and distribute detailed minutes to all attendees, including Client and Architect.  Consultant shall establish, with the approval of Client, on-site organization, lines of authority, and the communication needed to carry out the overall purpose and plans of the project team.

(f)     **Construction Schedule**.  Consultant shall review Contractor's Project schedule and shall verify that the Project schedule is prepared in accordance with the requirements of the Contract Documents and that it establishes completion dates that comply with the requirements of the Project schedule approved by Client.  Consultant shall update the Project schedule incorporating the activities of Contractor on the Project, including activity sequences and durations, allocation of labor and materials, processing of shop drawings, product data and samples, and delivery of products requiring long lead time and procurement.  The Project schedule shall include Client's occupancy requirements showing portions of the Project having occupancy priority.  Consultant shall update and reissue the Project schedule as required to show current conditions.  If an update indicates that the previously approved Project schedule may not be met, Consultant shall recommend corrective action to Client and Architect as soon as possible.

(g)     **Sequence Coordination**.  Consistent with the various bidding documents, and utilizing information from Contractor, Consultant shall coordinate the sequence of construction and assignment of space in areas where Contractor and Subcontractors are performing Work.

(h)     **Contractor Performance**.  Consultant shall endeavor to obtain satisfactory performance from each of the Contractor and Subcontractors.  Consultant shall recommend courses of action to Client when requirements of the Construction Agreement or subcontracts are not being fulfilled.

(i)     **Construction Cost Control**.  Consultant shall continuously monitor the approved estimate of Construction Cost.  Consultant shall show actual costs for activities in progress and estimates for uncompleted tasks by way of comparison with such approved estimate.

(j)     **Cash Flow Control**.  Consultant shall develop cash flow reports and forecasts for the Project and advise Client as to variances between actual and budgeted or estimated costs.  Cash flow and manpower projections developed during the pre-construction phase shall be developed and monitored through, among other things, the use of a cost and manpower loaded schedule.

(k)     **Work Requiring Accounting Records**.  When Consultant performs work outside Basic Services, Consultant shall maintain detailed accounting records on authorized Work performed under unit costs, additional Work performed on the basis of actual costs of labor and materials, and other Work requiring accounting records.

(l)      **Payment Procedures**.  Consultant shall develop and implement procedures for the review and processing of applications by Contractor for progress and final payments.

(m)      **Payment Certification**.   Based on Consultant's observations and evaluations of Contractor's application for payment ("**Application for Payment**"), Consultant shall review and, subject to Subsections (n) and (o) below, certify the amounts due to Contractor. Such certifications shall be solely for the benefit of Client and shall not be binding upon Client.

(n)      **Payment Certification Representations**.      Consultant's certification for payment shall constitute a representation to Client, based on Consultant's determinations at the site and on the data comprising the Applications for Payment, that, to the best of Consultant's knowledge, information and belief after compliance with its obligations under this Agreement (including without limitation, observation of the completed work, comparison of the work with the requirements of the Contract Documents, and periodic observations while work was under construction): (1) the Work has progressed to the point indicated and (2) the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to minor deviations from the Contract Documents correctable prior to completion and to specific qualifications expressed by Consultant.  The issuance of a Certificate for Payment shall further constitute a representation that to the best of Consultant's knowledge, Contractor is entitled to payment in the amount certified.

(o)      **Payment Certification Provisos**.  The issuance of a Certificate for Payment shall not be a representation that Consultant has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work and (2) reviewed construction means, methods, techniques, sequences for the Contractor's own Work, or procedures.

(p)      **Safety Programs**.  Consultant shall review the safety programs developed by Contractor for purposes of coordinating the safety programs with those of the other contractors, if any, and to make sure that the programs are consistent with the requirements of the Contract Documents.  Consultant's responsibilities for coordination of safety programs shall not extend to direct control over or charge of the acts or omissions of Contractor, Subcontractors, agents or employees of the Contractor or Subcontractors, or any other persons performing portions of the Work and not directly employed by Consultant. However, Consultant shall periodically monitor Contractor's implementation of its safety program.

(q)      **Quality Control**.  Consultant shall establish a comprehensive quality control and inspection program to assure that the Work is performed in accordance with the drawings, specifications, and other Contract Documents.  Consultant shall use commercially reasonable efforts to determine that the Work of Contractor is being performed in accordance with the requirements of the Contract Documents, endeavoring to guard Client against defects and deficiencies in the Work.  Consultant shall reject any portion of the Work and transmit to Client and Contractor a notice of nonconforming Work when it is the opinion of Consultant, Client, or Architect that such Work does not conform to the requirements of the Contract Documents. Consultant is not authorized to change, revoke, alter, enlarge, relax or release any requirements of the Contract Documents or to approve or accept any portion of the Work not conforming with the requirements of the Contract Documents.   Communication between Consultant and Contractor with regard to quality review shall not release Contractor from its obligation to perform in accordance with the terms of the Contract Documents.  Consultant shall monitor Contractor's coordination of the testing and inspection provided by outside agencies as required by the technical sections of the specifications and by applicable codes and law.   As appropriate,

Consultant shall have authority, upon written authorization from Client, to require additional inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed.  Consultant, in consultation with Architect, may recommend Client that it reject Work which does not conform to the requirements of the Contract Documents.

(r)    **Scheduling**.  Consultant shall monitor Contractor's scheduling and coordination of the sequence of construction with the objective of causing such sequence to be in accordance with the Contract Documents and the latest approved Project schedule.

(s)    **Control Limits**.  With respect to Contractor's own Work, Consultant, subject to the obligations of Consultant under this Agreement, shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work of Contractor, since these are solely Contractor's responsibility under the Construction Agreement.  Subject to the obligations of Consultant under this Agreement, Consultant shall not be responsible for Contractor's failure to carry out the Work in accordance with the respective Contract Documents.  Consultant shall not have control over or charge of acts or omissions of Contractor, Subcontractors, or their agents or employees, or any other persons performing portions of the Work not directly employed or retained by Consultant, subject to the obligations of Consultant under this Agreement.

(t)    **Interpretation Resolution**.  Consultant shall review Contractor's requests to Architect for interpretations of the meaning and intent of the Drawings and Specifications, and assist in the resolution of questions that may arise.

(u)    **Change Order Control**.  Consultant shall review requests for changes, assist in negotiating Contractor's proposals, submit recommendations to Architect and Client, and, if they are accepted, prepare Change Orders.  Consultant shall establish and implement a change order control system.  Any changes to the Contract between Client and Contractor shall be made only by change orders which have been executed by Client.  At the request of Client, Consultant shall describe in detail any changes which Client wishes to initiate.  If appropriate or necessary and subject to the prior approval of Client, the change order request shall be accompanied by drawings and specifications prepared by Architect.  In response to the request for a proposal, Contractor shall submit to Consultant for evaluation detailed information concerning the price and time adjustments, if any, as may be necessary to perform the proposed change order work.  Consultant shall review Contractor's proposal, shall discuss the proposed change order with Contractor and Client, and shall endeavor to determine Contractor's basis for the price and time proposed to perform the Work.  Concurrently with Architect, Consultant shall review the contents of all Contractor-requested changes to the Contract Time or Contract Sum, endeavor to determine the cause of the request and assemble and evaluate information concerning the request.  Consultant shall provide to Architect a copy of each change request, and Consultant shall consider in its evaluations of the Contractor's request Architect's comments, if any, regarding the proposed changes.  Consultant shall make recommendations to Client in conjunction with Architect regarding all proposed change orders.  At Client's direction, Consultant shall prepare and issue to Contractor appropriate change order documents.  Consultant shall provide to Architect copies of all approved change orders.

(v)    **Claims Review**.  Consultant shall undertake, and/or assist Architect, in the review, evaluation and documentation of Claims.

- 5 -

(w) **Permits, Insurance and Bonds**.  Consultant shall receive certificates of insurance from Contractor and forward them to Client.  Consultant shall verify that the required permits, bonds, and insurance have been obtained and will continue to make periodic verifications to make sure that such permits, bonds, and insurance continue to be maintained in full force and effect.  Such action by Consultant shall not relieve Contractor of its responsibility to comply with the provisions of the Contract Documents.

(x) **Shop Drawings**.  Consultant shall establish and implement procedures for expediting the processing and approval of Shop Drawings, Product Data, Samples and other submittals in cooperation with Architect. Consultant shall discharge all of its obligations with respect to the foregoing, as set forth in this Agreement.

(y) **Progress Reports**.  Consultant shall record the progress of the Project.  Consultant shall submit written progress reports to Client and Architect when necessary, including information on Contractor and each Subcontractor's Work, as well as the entire Project, showing percentages of completion.  Consultant shall monitor Contractor's daily log so that the log contains a record of weather, Contractor's and each Subcontractor's Work on the site, number of workers, identification of equipment, Work accomplished, problems encountered, and other similar relevant data as Client may require.

(z) **Record Copy**.  Consultant shall maintain at the Project site for Client one record copy of all Contracts, Drawings, Specifications, addenda, Change Orders and other modifications, in good order and marked currently to record changes and selections made during construction, and in addition, approved Shop Drawings, Product Data, samples and similar required submittals.  Consultant shall make all such records available to Architect and upon completion of the Project shall deliver them to Client.

(aa) **Intentionally Deleted**.

(bb) **Final Testing and Start-up**.  With Architect and Client's maintenance personnel, Consultant shall observe Contractor's final testing and start-up of utilities, operational systems and equipment.

(cc) **Substantial Completion; Punch Lists**.  Consultant shall assist Client and Architect in determining when the Project and when Contractor's and each Subcontractor's Work is substantially complete and, in this connection, shall render to Client its informed judgment whether and when the Project and Contractor's and each Subcontractor's Work has been substantially completed in accordance with the Contract Documents.  When Consultant considers each Contractor's Work or a designated portion thereof substantially complete, Consultant shall consult with Contractor and shall direct Contractor to prepare for Architect and Client a list of incomplete or unsatisfactory items and a schedule for their completion.  Consultant shall assist Architect in conducting inspections to determine whether the Work or designated portion thereof is substantially complete.

(dd) **Final Completion**.  Consultant shall assist Architect in its evaluating and coordination of the correction and completion of the Work.  Following issuance of a Certificate of Substantial Completion of the Work or a designated portion thereof, Consultant shall evaluate the completion of such Work, give Client its professional judgment about the status of the Work and, based thereon, make recommendations to Architect and Client when such Work is ready for final inspections and make written recommendations regarding payment to Contractor.

(ee)    **Warranties**.  Consultant shall secure the warranties and similar submittals required by the Contract Documents for delivery to Client and ensure the delivery of all keys, manuals, record drawings and maintenance stocks to Client.

1.4    **Changes to the Work**.

(a)    As used herein:

(ii)    "**Directive**" means a written document signed by Client consisting of written instructions issued by Client as to the performance of the Work or the activities of Consultant or of its Subconsultants, if any.  A Directive may become the subject of a Change Order (as defined below).

(ii)    "**Change Order**" means a written document signed by both Client and Consultant which amends this Agreement and/or involves revision(s) to the scope of Work which may result in an alteration to the Project schedule and/or the Compensation.

(b)    Client may, from time to time and in its sole and absolute discretion, modify the Work by issuing a Directive or Change Order to Consultant describing the nature and scope of the change in the Work (the "**Scope Change**").  Unless the Directive indicates that it is for a quote only, Consultant will immediately proceed with the performance of the Scope Change.

(c)    In the event Client delivers to Consultant a Directive or Change Order which serves as the basis of a Scope Change, Consultant will respond in writing with what it believes to be an appropriate dollar amount to add to or subtract from the Compensation by reason of the Scope Change.  If the parties agree upon the amount of the addition or deduction, a written Change Order to this Agreement will be signed.  If the parties cannot agree, the parties will endeavor to resolve their disagreement with regard to the amount due for the change in the Work.  The amount agreed to by the parties for the Scope Change will be paid within Client's normal invoice process as provided for in the Compensation section of this Agreement.  Any Scope Change undertaken by Consultant will remain within the scope of this Agreement and will be governed by the terms and conditions of this Agreement, as amended by any Change Order or Work Authorization.

(d)    If, at any time during the performance of the Work, Consultant reasonably believes that Client has increased the Scope of Work without issuing a Directive and/or Change Order, and Consultant believes that as a result it is entitled to and may seek additional remuneration or time to perform its obligations under this Agreement, Consultant must notify Client in writing within five (5) business days after the event giving rise to such claim.  Consultant's failure to give timely notification to Client will serve, at Client's option, as a basis for denying the claim.  After being notified by Consultant of a claim for additional Compensation, Client may authorize additional Compensation in accordance with the provisions of this Agreement.  If Consultant proceeds with activities for which additional Compensation is claimed prior to receiving written authorization from Client, Consultant will not receive any additional Compensation.

2.    **Additional Services; Work Authorizations**.

2.1    **Additional Services**.  Consultant shall provide additional services not otherwise included as Basic Services under this Agreement ("**Additional Services**") when requested by Client in writing pursuant to a Work Authorization (as defined below) or otherwise.

- 7 -

The nature of such Additional Services shall be set forth in writing specifically referring to this Agreement, and all terms of this Agreement shall apply to such Additional Services except as expressly provided otherwise in said writing.  By way of example, Additional Services may include the following: preparing to serve or serving as an expert witness in connection with any public hearing, arbitration proceeding or legal proceeding, in excess of Consultant's preparation for appearance and appearance at the public hearings.

2.2    **Work Authorizations**.  "**Work Authorization**" means those documents that may be signed by Client and Consultant from time to time to authorize additional services on for the Project or to authorize new work on a new project.  The Work Authorization will specify the applicable Project, Work, Project schedule, Compensation, Client's designated project representative, and any modifications to this Agreement for the applicable Project.  Each Work Authorization will refer to or have attached any supplemental exhibits, drawings, specifications and other documents relating to the Work.  Each Work Authorization referencing this Agreement shall be subject to the terms and conditions hereof, except as expressly modified in the Work Authorization and shall, upon mutual execution thereof, become a part of this Agreement.

3.    **Scheduling and Personnel**

3.1    **Sufficient Personnel**.  Consultant shall at all times proceed diligently to complete the Basic Services and Additional Services as expeditiously as is consistent with a professional standard of care and the orderly progress of the Work, and Consultant shall at all times provide sufficient personnel to accomplish its services required by this Agreement. Consultant recognizes that Client is entering into this Agreement based upon the availability and commitment of the key personnel of Consultant for the Basic Services and Additional Services. Accordingly, Jeffrey Stone shall be assigned to the Project and (i) will reserve sufficient time so that he/she/they may devote all required energies to the Project, (ii) will provide all necessary direction and support to his/her/their assigned personnel to ensure they perform their designated tasks and (iii) will be available for all scheduled meetings and conferences and generally available to Client for consultation.

3.2    **Timely Performance.**  Consultant's Basic Services and Additional Services shall be performed in a timely manner so as not to cause any delay in starting construction of the Project and otherwise in accordance with the Project schedule set forth by Client.

4.    **Compensation for Basic Services**.

4.1    **Compensation**.

(a)    **Development Phase**. Consultant shall receive a development fee (the "**Development Fee**") in an amount equal to Two Million Five Hundred Thousand Dollars ($2,500,000) on a "flat fee" basis for developing and overseeing the development of the Project. Ten percent (10.00%) of the Development Fee shall be payable at the Closing (as defined in that certain Third Amended and Restated Limited Liability Company Agreement of Casa Oaks Investment Company, LLC (the "**Operating Agreement**")) so long as all permits required to commence construction of the Project have been received, and the balance of the Development Fee shall thereafter be payable monthly in arrears pro rata over the subsequent twenty-three (23) months.

(b)    **Construction Phase**.  Consultant shall receive an amount equal to one and one-half (1.50%) of the total Hard Construction Costs of the Project of the approved

Construction Budget (as defined in the Operating Agreement) (the "**Construction Fee**"; the Construction Fee and the Development Fee are collectively referred to herein as the "**Compensation**") payable in arrears based on the pro rata completion of the development of the Project, which shall be based on the percentage of completion of the Hard Construction Costs portion of the Work as set forth in the monthly Applications for Payment prepared by the Contractor and approved by Client pursuant to the terms of the Construction Agreement. "**Hard Construction Costs**" shall solely include the costs of actual labor and materials with respect to the construction of the Project and shall not include any soft costs, including but not limited to, land costs; debt service; other lender fees; any professional fees, including but not limited to, general contractor fees, architectural fees, design fees, engineering fees, consulting fees, land use fees, legal fees, and other professional fees; costs for entitlements, permits, and licenses; and all other costs and expenses that are considered soft costs related to the Project.

       4.2    **Corrections**.  No compensation shall be paid to or claimed by Consultant for services required to correct deficiencies in any documents prepared by Consultant and attributable to errors, conflicts, or omissions of Consultant.

       4.2    **Dispute as to Percentage of Completion.**  Should Client disagree with Consultant's estimated percentage of completion of the Construction Phase, Client shall so advise Consultant within fourteen (14) calendar days after receipt of the applicable monthly statement.

       4.3    **Submission of Invoices and Monthly Statements.**  Invoices and monthly statements shall be paid within thirty (30) days after receipt, if received by Client on or after the 15th day of the month in which such invoices and/or monthly statements are submitted ("**Submittal Month**"), and if received by Client after 15th day of the Submittal Month, within forty-five (45) days after receipt.

     5.    **Intentionally Omitted**

     6.    **Accounting Records**.  Consultant shall maintain (in a generally recognized accounting basis) throughout the course of the Project and for five (5) years thereafter following, full and complete books and records verifying the nature and extent of the cost of the services rendered under this Agreement.  All of said books and records shall be available with reasonable notice during normal business hours for examination by Client and Client's authorized representative.

     7.    **Insurance.**

       7.1    **Consultant's Insurance**.  During the performance of its services, and until termination of this Agreement, unless otherwise specified, Consultant, at its sole cost and expense, shall carry and maintain insurance in accordance with this Section 7:

         (a)    Worker's Compensation Insurance at statutory limits and Employers' Liability Insurance with a limit of not less than One Million Dollars ($1,000,000) for each bodily injury by accident, bodily injury by disease, and annual aggregate, to provide statutory worker's compensation benefits as required by the laws of any jurisdiction in which such employees are located or perform services for all of Consultant's employees to be engaged in the services provided under this Agreement.

         (b)    Commercial General Liability Insurance on an "occurrence" basis, covering all operations of Consultant as named insured, including contractual liability for

the indemnity and hold harmless agreement set forth in Section 7.5 hereof against claims for bodily injury or death, including personal injury, and property damage with a limit of not less than One Million Dollars ($1,000,000) per occurrence and Two Million Dollars ($2,000,000) annual aggregate. Coverage shall be maintained from commencement of the Work until not less than ten (10) years after substantial completion and acceptance of the Project, or to the expiration of any applicable Statute of Repose in the jurisdiction where the Project is located, whichever is shorter. Without limiting the foregoing, coverage shall contain no limitations or exclusions for the following: (1) No limitation for the Additional Insureds' vicarious liability, strict liability, or statutory liability; (2) No action-over exclusions or other similar limitations or exclusions applicable to claims brought by Consultant's employees, subconsultants, or subcontractors; (3) No limitations or exclusions based on the existence or applicability of the Additional Insureds' project-specific insurance, if any; (4) No professional liability exclusion broader than ISO form 22 79 04 13; (5) No narrowing modification to or deletion of the standard definition of "insured contract"; and  (6) No exclusion applicable Consultant's scope of work or to the nature of the project (e.g. a residential exclusion on a residential project) are allowed.

(c) Commercial Auto Liability Insurance with a Combined Single Limit (bodily injury and property damage) no less than One Million Dollars ($1,000,000) per accident, provided that the limits of such insurance shall not be construed to limit Consultant's liability to Client under Section 7.5. Such coverage shall apply on an "any auto" basis covering Consultant, its agents and employees, in pursuit of the services provided for in this Agreement, of any owned, non-owned or hired automotive equipment, including uninsured and underinsured motorist coverage; loading and unloading; and medical payment protection.

(d)    Professional Liability Insurance, with limits of liability (which may be comprised of primary and excess layers of insurance) of no less than Three Million USD ($3,000,000) applicable to the work and services provided under this Agreement. Such insurance must have no exclusion for bodily injury or property damage and no exclusion for pollution-related liability. If Consultant's Professional Liability policy is a "blanket" or "practice" policy, covering all of Consultant's work, then Consultant shall notify Owner in the event that available limits drop below 20% of the required total limits; in that event, Consultant may be required to purchase additional limits to cover liabilities associated with the work under this Agreement. This insurance shall include a retroactive date which predates the commencement of Work under the Agreement and such coverage must continue for or include an extended reporting period of at least ten (10) years after substantial completion and acceptance of the Project, or to the expiration of any applicable State of Repose in the jurisdiction where the Project is located, whichever is shorter. This policy shall include coverage for liability imposed by the indemnity and hold harmless agreement set forth in Section 7.5 hereof subject to the exceptions and exclusions contained in the Professional Liability Insurance policy, provided that the limits of such insurance shall not be construed to limit Consultant's liability to Client under Section 7.5.

(e)    Comprehensive Umbrella and Excess Liability Insurance, with a single limit of not less than Three Million Dollars ($3,000,000) each occurrence, Three Million Dollars ($3,000,000) aggregate, such policy (or policies issued in layers if necessary) following all terms and conditions of the primary insurance required in Subsection (b) above. All Umbrella/Excess Liability policies must be specifically endorsed to be primary and noncontributory to the Indemnitees' own insurance; mere follow-form provisions are not sufficient.

7.2    **Subconsultants' Insurance**.    Consultant shall require any and all Subconsultants engaged or employed by Consultant in connection with the performance of Consultant's services hereunder to carry and maintain insurance at all times while engaged in the performance of services covered by this Agreement with limits and coverages reasonably required by Client and including coverage required by Subsection 7.1(c) above, and to furnish

Client such evidence thereof as Client may reasonably request.  Such insurance shall be carried and maintained with a company or companies licensed to do business in, in good standing in and qualified to do business in the State (or if outside of the United States, the country/jurisdiction) in which the Premises is located and reasonably approved by Client.  Consultant hereby waives any rights of recovery against Client for property damage or personal injury for which Consultant is required to be insured hereunder or is otherwise insured.

7.3    **Termination of Insurance.**  All policies of insurance required under the terms of Subsections (b) and (d) of Section 7.1 and for similar insurance required in Section 7.2 shall name Client as an additional insured and shall be primary and non-contributing.  In addition, all policies of insurance required by this Agreement shall contain an agreement on the part of the insurers that in the event of cancellation of the policy, the insurer shall give not less than thirty (30) days advance written notice to Client.  Consultant shall request its insurance broker to provide Client, promptly after execution and delivery hereof, with confirmation that in the event such insurance broker become aware of cancellation of any policy which Consultant is required to maintain pursuant to the terms of this Agreement or a reduction as to coverage or amount thereunder (other than claims made of which Client is aware), the broker shall endeavor to give prompt notice thereof by mail to Client.  Consultant hereby agrees that in the event of a reduction as to coverage or amount under any policy of insurance required under the terms of Subsections 7.1(b), (c), and (d) and Section 7.2 hereof, Consultant shall give Client written notice thereof by registered or certified mail promptly after it becomes aware of such reduction.  All such insurance shall be maintained, if commercially practicable to do so, until the expiration of any applicable statute of limitations, but in any event for at least three (3) years following completion by Consultant of all its services under this Agreement.

7.4    **Policies of Insurance.**  All insurance required pursuant to this Section 7 shall be carried with responsible insurance carriers licensed to do business in the State in which the Premises is located.  Consultant shall furnish Client with certificates showing that all insurance is being maintained as required herein as well as a copy of the policies of insurance required under the terms of Subsections 7.1(b), (c), and (d) hereof, but excluded from such copies shall be any confidential information, premium information, and exclusions and endorsements to such policies which do not apply to the Project.  Upon renewal of any such insurance that expires before the completion of Consultant's services under this Agreement or before the expiration of Consultant's obligation to carry insurance hereunder, Client shall be provided with renewal certificates or binders.  Consultant will endeavor to provide such certificate or binder not less than fifteen (15) days prior to such expiration together with evidence of the payment of premiums thereon.

7.5    **Indemnity.**

(a)    To the fullest extent permitted by law, Consultant shall indemnify, defend, protect and hold harmless Client, Client's agents and representatives (excluding any contractors or material suppliers of any level that provide construction services or material for the Project) to the extent acting within the scope of their relationship with Client, and Client's, members, investors, managers, lenders, constituent partners, officers, directors, shareholders and employees, and each of them (collectively, "**Indemnitees**," and individually, an "**Indemnitee**") from and against any and all claims, demands, damages, losses, lawsuits and other proceedings, causes of action, liabilities, claims of lien, liens, civil or criminal penalties and charges, costs and expenses (including without limitation reasonable attorneys' fees) arising out of any personal injuries (including but not limited to bodily injuries or death), property damage, or claims for payment to the extent proximately resulting from any actionable willful or negligent act, omission or error of Consultant, its agents, officers and employees, or any Subconsultant, or its agents, officers or employees, in connection with the performance or conduct of any services provided

under this Agreement, except to the extent that any such claims result from any willful or negligent acts, omissions or errors of an Indemnitee, Consultant shall not owe indemnity to that particular Indemnitee for such act or omission.

(b)     The obligations described in Subsection 7.5(a) shall not be construed to negate, abridge or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any Indemnitee.

(c)     In any and all claims against Client or any of its agents or employees by any employee of Consultant, its Subconsultants, anyone employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation under this Section 7.5 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Consultant or its Subconsultants under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

7.6     **Responsibility for the Acts of Others**.  Consultant shall not guarantee the performance of Contractor's work or products of any contractor, Subcontractor, manufacturer, supplier, or fabricator, or of any consultant retained by Client; however, Consultant shall be responsible for the negligent acts and omissions of any and all parties hired or retained by the Consultant.  Consultant's services are being performed for the benefit of Client, and no claim against Consultant shall accrue to Contractor or any Subcontractor, manufacturer, supplier, or fabricator, as a result of this Agreement or the performance or nonperformance of the Consultant's services.

8.     **Client and Consultant's Representatives**.   Without limiting Section 3.1, Client and Consultant shall each designate in writing to the other a representative authorized to act on their respective behalf in connection with the performance of Consultant's services under this Agreement.  Said representatives shall examine documents and shall render decisions pertaining thereto promptly in order to avoid unreasonable delay in the progress of Consultant's work.  Any approval by Client of any component of Consultant's services or product hereunder shall be evidenced only by a writing executed by Client's authorized representative.

9.     **Termination of Agreement.**

9.1     **Superseding Agreement**. This Agreement will terminate on the Operating Agreement Effective Date, as defined in the Operating Agreement for reference purposes. Upon such termination, Consultant shall be paid that portion of the Compensation due hereunder as of the date of termination.

9.2     **Default**.  Client may terminate upon written notice, Consultant's services under this Agreement at any time after the occurrence of any of the following events of default:

(a)     The failure of Consultant to perform any of its required material obligations, responsibilities or services set forth in this Agreement within ten (10) days following written notice by Client to Consultant of such failure.

(b)     The filing of a mechanic's or materialman's lien against the Project by Consultant or it's Subconsultants which is not discharged within thirty (30) days of the filing of such a lien.

(c)     The filing by or against Consultant of any bankruptcy, insolvency, arrangement or other debtor-relief proceeding, or the appointment of a receiver for all or any part

- 12 -

of Consultant's business, under any provision of the Federal Bankruptcy Act or any successor statute or any state statute providing for similar remedies which, in the case of a filing against Consultant, is not dismissed, or if said receiver is not removed, within sixty (60) days from the date of said filing or the appointment of such receiver.

9.3    **Compensation.**  In the event of any termination pursuant to Section 9.2, Consultant shall be paid that portion of the Compensation due hereunder as of the date of termination, less any sums as may be reasonably claimed by Client as damages incurred or likely to be incurred by Client as a result of Consultant's default hereunder.

9.4    **Consultant's Right to Terminate.**   Consultant may terminate its obligations under this Agreement only if Consultant (a) has not received any undisputed fee or other compensation due from Client within ninety (90) days of its due date, (b) after such ninety (90) day period, Consultant has given written notice to Client of Consultant's intent to terminate, and (c) Client fails to pay such undisputed sum within ten (10) days after such notice.  Any such termination by Consultant shall be with a reservation of all rights and without prejudice to any other rights or remedies of Client or Consultant.

9.5    **Actions Upon Termination**. In the event of termination of this Agreement, (i) Consultant and Client shall fully cooperate with one another to ensure a smooth transition of Work to another development manager designated by Client and (ii) Consultant shall promptly (and in any event no later than 15 days after such termination) deliver to Client the following:

(a)    A final accounting, reflecting the expenses and status of the Work as of the date of termination.

(b)    All records, books, correspondence, instructions, drawings, receipts, vouchers, memoranda and similar data relating to the Work to be delivered.

(c)    All revenues and receipts pertaining to the Work and other monies of Client on hand or in any bank account of Consultant.

(d)    All other information or documentation reasonably requested by Client, the Consultant, or the replacement construction manager that is reasonably necessary for a replacement construction manager to ensure a smooth transition of the Work.

10.    **Right to Withhold Payments; Right to Stop Work**.

(a)    Client shall have the right to withhold from payments due to Consultant such sums as are necessary to protect Client against any loss or damage which may result from negligence or unsatisfactory work by Consultant, failure by Consultant to perform its obligations hereunder, or claims filed against Consultant or Client relating to Consultant's services.

(b)    With respect to any amounts claimed by Consultant to be due and owing to Consultant hereunder which are not disputed by Client, Consultant shall have the right to suspend performing Basic Services and Additional Services hereunder only if (a) Consultant has not received any undisputed fee or other compensation due from Client within ninety (90) days of its due date, (b) after such ninety (90) day period, Consultant has given written notice to Client of Consultant's intent to suspend performing Basic Services and Additional Services, and (c) Client fails to pay such undisputed sum (with any late payment charge due hereunder) within ten (10) days after such notice.

11.    **Ownership of Documents/Intellectual Property.**

        11.1   **Property of Client.**  All drawings, specifications, computations, sketches, test data, survey results, models, photographs, renderings and other materials prepared by the Consultant or its Subconsultants in connection with the performance of the services called for under this Agreement, and all copyrights, rights of reproduction and other interests relating thereto, are and shall remain the property of Client.  These instruments of service may represent imperfect data and may contain conflicts, errors, omissions, Code violations and improper use of materials which will be corrected when identified.  Client shall be entitled to the use of all the documents referenced in this Section 11.1, and no use thereof shall be made by Consultant for any purpose other than the construction of the Project without the written consent of Client.  Client hereby releases and agrees to defend, indemnify and hold Consultant, its partners, employees, agents and consultants harmless of, from and against any claim, loss, cost, damage or expense, including attorneys' fees, arising out of, based upon, or related to any use of these documents under circumstances in which Consultant is not then performing services.

        11.2   **Publicity/Confidentiality.** Any publicity, advertisement or press release with respect to the Project shall be under the sole discretion and control of Client, and no contact or discussions by Consultant or its Subconsultants regarding the Project with the public press or media representatives shall be had without prior written consent of Client.  Client agrees to provide professional credit, where appropriate, to Consultant in publicity and promotional materials which are contributed to or controlled by Client.  The names of individual employees, to the extent such material is controlled by Client, shall be included only with the prior approval of Consultant's representative.  The terms of this Agreement and all other documentation and information pertaining to the Project of which Consultant reviews, prepares or becomes aware throughout the course of the Project, shall be kept confidential by Consultant and shall not be disclosed in whole or in part to any third party (except lenders, agents, attorneys and representatives of Consultant as necessary to perform services) unless so required by a court or governmental agency of competent jurisdiction or unless necessary for a party to assert its rights hereunder.

        11.3   **Use of Name**.  Consultant shall not use the name, logo or marks of "Client" (alone or in conjunction with or as a part of any other word or name) or derivatives thereof, or the names, trade names, logos or marks of any their affiliated companies (collectively with respect to Client and all of its affiliates, the "**Intellectual Property**") except in connection with reference to the name of the Project where the Project has been so named with Client's prior written consent.  Consultant shall not advertise or publicly disseminate information regarding the Project or involving the Intellectual Property without Client's prior written consent, which consent may be withheld in Client's sole discretion.  In no event, however, shall any such public disclosure be deemed or construed (1) to make Consultant the agent, servant, or employee of Client, or (2) to create any partnership, joint venture, or other association between Consultant and Client.

        12.   **Assignment.**  Consultant shall not assign or transfer any of its rights or obligations under this Agreement, or subcontract the performance of any portion of the services required hereunder except as otherwise may be agreed in writing by Client, in its sole and absolute discretion.  The assignment of this Agreement shall not dilute or void any provisions of this Agreement, nor relieve Consultant for liability therefrom.

        13.   **Liens**.  Consultant shall not file or impose or permit any Subconsultant to file or impose any laborer's, materialman's, mechanic's or other similar liens on the Project.  If any such lien or claim therefor is filed or otherwise imposed by Consultant or any Subconsultant then, in such event, Consultant shall, within thirty (30) days of such filing cause such lien to be released,

bonded against or otherwise discharged.  If any such lien or claim therefor is filed and if Consultant does not cause such lien to be released, bonded against or discharged within such time period, then Client shall have the right to pay all sums necessary to obtain such release and discharge and deduct all amounts so paid from the payments next due Consultant under this Agreement.  Client may require as a condition precedent to the making of any payment hereunder that Consultant submit evidence satisfactory to Client that no valid unpaid claims exist for any labor, materials, services or other obligations incurred by Consultant in the performance of the Basic Services and Additional Services.

14.    **General Provisions.**

14.1    **Waiver**.  No waiver by Client or Consultant of any breach of any term, provision or condition contained in this Agreement, or the failure to insist upon strict performance thereof shall be deemed to be a waiver of such term, provision or condition as to any subsequent breach thereof or a waiver of any other term, provision or condition contained in this Agreement. The exercise of any right or remedy hereunder shall not be deemed to preclude or affect the exercise of any other right or remedy provided herein.

14.2    **Entire Agreement**.  This Agreement constitutes the entire agreement between Client and Consultant with respect to the Project and the services described herein, and supersedes any and all prior and contemporaneous oral or written understandings.  This Agreement may not be altered, amended or modified except by a written document executed by both Client and Consultant.

14.3    **Successors.**  Subject to the provisions of Section 12, this Agreement shall bind and inure to the benefit of the successors and assigns of the parties hereto.

14.4    **Notices**.    All notices, approvals, demands, reports and other communications provided for in this Agreement (collectively "**notice**") shall be in writing (including Email, telegram or similar writing) and shall be given to such party at its address or such electronic communication number as is set forth above or such other address or electronic communication number, as such party may hereafter specify, for that purpose by notice to the other party.  Each notice shall be deemed delivered to the party to whom it is addressed (a) if personally served or delivered, upon delivery, (b) if given by electronic communication, whether by Email, upon the sender's receipt of an appropriate answer back or other written acknowledgment or confirmation of receipt of the entire notice, (c) if given by certified or registered mail, return receipt requested, deposited with the United States mail with first-class postage prepaid, seventy-two (72) hours after such notice is deposited with the United States mail, (d) if given by overnight courier, with courier charges prepaid, twenty-four (24) hours after delivery to said overnight courier, or (e) if given by any other means, upon delivery at the address specified in this Agreement unless another address is specified in writing by the addressee.

14.5    **Cooperation**.  Client reserves the right to employ other consultants in connection with the Project, and Consultant shall cooperate with such other consultants and Client shall cause them to reasonably cooperate with Consultant as required to facilitate completion of the Project; provided that Consultant shall not be required to perform any services other than as set forth herein.

14.6    **Severability**.  If any term or provision of this Agreement, the deletion of which would not adversely affect the receipt of any material benefit by either party herein, shall be held invalid or unenforceable, the remaining terms, conditions and provisions of this Agreement

- 15 -

shall not be affected thereby and each of said terms, conditions and provisions shall be valid and enforceable to the fullest extent permitted by law.

14.7 **Construction.** This Agreement shall be interpreted and construed in accordance with the laws of the State in which the Project is located.

14.8 **Headings.** The headings of the sections of this Agreement are for convenience only and are not to be considered in construing said sections.

14.9 **Costs and Attorneys' Fees.** If any action, arbitration or proceeding (including, without limitation, any action or proceeding under any bankruptcy or insolvency statutes or regulations) is brought by Client or Consultant to enforce its respective rights under this Agreement, the unsuccessful party therein shall pay out-of-pocket costs and reasonable attorneys' fees incurred by the prevailing party in such amount as shall be determined by the arbitrators or court having jurisdiction. This provision shall not provide any rights of recovery to either party's Insurers and is only applicable to reasonable out-of-pocket defense costs.

14.10 **Nondiscrimination.** Consultant hereby covenants by and for itself, its heirs, executors, administrators, assigns, and all persons claiming under or through the Consultant that there shall be no discrimination against or segregation of, any person, or group of persons on account of sex, sexual orientation, age, marital status, race, color, religion, creed, national origin or ancestry in the sale, lease, sublease, transfer, use, occupancy, tenure or enjoyment of the land on which the Project will be located.

14.11 **Dispute Resolution.**

(a) With regard to any material disputes between Client and Consultant, the parties agree to work together in good faith to resolve all disputes promptly. Either party may demand in writing that each parties' management representatives meet at such place as Client may designate to resolve the dispute. Upon receipt of this demand, each party will promptly comply and will negotiate in good faith to resolve the dispute. If the parties do not resolve the dispute within fourteen (14) days of the date of the first meeting between management representatives, Client and Consultant agree to mediate the dispute with a mutually agreed upon mediator. If the parties cannot agree upon the selection of a mediator, the mediator will be chosen from the list of certified mediators maintained by the court having jurisdiction over this Agreement. The parties agree to share the cost of any independent mediator engaged to assist the parties in resolving their differences.

(b) In the event the claim, dispute or other issue is not resolved through mediation, either party may institute arbitration to resolve the issues. If arbitration is initiated, the parties to this Agreement agree that venue and jurisdiction of any litigation between them will be vested exclusively in a court of competent jurisdiction sitting in the County and State in which the Project is located. The parties expressly agree to waive trial by jury in any such legal proceeding.

14.12 **Time is of the Essence.** Time is of the essence in the performance of the terms and conditions of this Agreement.

14.13 **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be an original but all of which together shall constitute but one and the same agreement.

- 17 -

14.14   **Further Assurances**. Consultant and Client agree to execute, acknowledge and deliver such further instruments and documents, and do all such other acts and things as may be required by law, or as may be required to carry out the intent and purposes of this Agreement.

14.15   The parties hereto acknowledge that Force Financial LLC, a California limited liability company ("**Force**"), which is the sole member of TRIMOD Aileron Investment LLC, a Delaware limited liability company ("**Investment LLC**"), which, in turn, is the sole member of Client, is acting solely as an exchange accommodation titleholder.  Notwithstanding anything to the contrary set forth in this Agreement, None of Force, Investment LLC, the manager of Investment LLC or Client (collectively, "Manager"), or any member, manager, or officer of Force (the "Force Group"), shall have any liability to Consultant for any of the obligations of Client arising under this Agreement or any other agreement or document executed in connection with the transactions described herein (the "**Related Documents**").  In the event that Force ceases to be the sole member of Investment LLC, the foregoing limitations on Consultant in this Section will no longer be effective, and Consultant shall have the right to exercise all rights and remedies available to it under this Agreement or the Related Documents and at law or equity; provided, however, that under no circumstances shall Force, the Manager or any member of the Force Group have any liability or obligation under this Agreement or the Related Documents.

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above written.


"CLIENT"

TRIMOD AILERON PROPERTY LLC,
a Delaware limited liability company

By:_____
Name: Robert Minsky
Title: Manager


"CONSULTANT"

MODERNE CAPITAL PARTNERS II, LLC,
a Delaware limited liability company

By:_____
Name: Jared B. Black
Title: Manager

- 17 -

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above written.

"CLIENT"

TRIMOD AILERON PROPERTY LLC,
a Delaware limited liability company

By:_____
Name: Robert Minsky
Title: Manager

"CONSULTANT"

MODERNE CAPITAL PARTNERS II, LLC,
a Delaware limited liability company

By:_____
Name: Jared B. Black
Title: Manager

# EXHIBIT 2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
9/24/2025 2:10:16 PM
Filing ID 20639242

Richard L. Cobb, No. 011427
**ELLSWORTH COBB PLC**
1850 N. Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: 602-523-3000
cobb@ellsworthcobb.com

*Attorneys for Defendant Trimod
 Aileron Property LLC*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| A.R. MAYS CONSTRUCTION, INC., an Arizona corporation, <br><br> Plaintiffs, <br><br> v. <br><br> TRIMOD AILERON PROPERTY, LLC, a Delaware limited liability company; NORTH RES. HOLDING, LP, an Arizona limited partnership; MAVERICK MORTGAGE COMPANY, LLC, a California limited liability company; KDM CONTRACTING, INC., an Arizona corporation; ADVANCED CONSTRUCTION SOUTHWEST OF ARIZONA, INC., an Arizona corporation; THE SHERWIN- WILLIAMS COMPANY, an Ohio corporation; INDWELL WOODS, INC., an Arizona corporation; ULTIMATE SHADE ALTERNATIVES, INC., an Arizona corporation; CENTRAL VALLEY SPECIALTIES, LLC., an Arizona limited liability company; DESIGN PLASTERING, INC., an Arizona corporation; R.A.P.I. LTD., an Arizona limited | Case No.: CV2025-019644 <br> Consolidated with CV205-015508 <br><br> **SEPARATE ANSWER AND COUNTERCLAIM OF TRIMOD AILERON PROPERTY LLC** |

- 1 -

partnership; HAWK CONTRACTING, LLC, an Arizona limited liability company; REPUBLIC NATIONAL INDUSTRIES OF TEXAS, LP, a foreign limited partnership; CROWN CABINET, LLC, a Texas limited liability company; LITTLE INDUSTRIES, INC., dba STONE COLD MASONRY, an Arizona corporation; 1TWENTY ELECTRIC, LLC, an Arizona limited liability company; MOSTLY SUNNY, INC., dba BLIND IDEAS, a Wyoming corporation; ISI DESIGN AND INSTALLATION SOLUTIONS, INC., a Maryland corporation; EVERON, LLC, a Colorado limited liability company; AMCON, LLC, an Arizona limited liability company; ABC CORPORATIONS 1-5; XYZ PARTNERSHIPS 1-5,,

Defendants.

## ANSWER

For its answer to Plaintiff' A.R. Mays Construction, Inc.'s ("ARM") complaint, Defendant Trimod Aileron Property LLC ("Trimod") admits, denies, and affirmatively alleges as follows:

- 2 -

## PARTIES, JURISDICTION AND VENUE

1. Admits the allegations of Paragraph 1.

2. Admits the allegations of Paragraph 2.

3. Admits the allegations of Paragraph 3.

4. Admits the allegations of Paragraph 4.

5. Trimod lacks sufficient knowledge and information to form a belief regarding truth of the allegations contained in Paragraph 5.

6. Admits the allegations of Paragraph 6.

7. Admits the allegations of Paragraph 7.

8. Admits the allegations of Paragraph 8.

9. Admits the allegations of Paragraph 9.

10. Admits the allegations of Paragraph 10.

11. Admits the allegations of Paragraph 11.

12. Admits the allegations of Paragraph 12.

13. Admits the allegations of Paragraph 13.

14. Answering Paragraph 14, admits only that R.A.P.I., Ltd. purports to have an interest in the Subject Property.

15. Trimod lacks sufficient knowledge and information to form a belief regarding truth of the allegations contained in Paragraph 15.

16. Admits the allegations of Paragraph 16.

17. Admits the allegations of Paragraph 17.

- 3 -

18. Admits the allegations of Paragraph 18.

19. Answering Paragraph 19, admits only that 1Twenty Electric purports to have an interest in the Subject Property.

20. Admits the allegations of Paragraph 20.

21. Admits the allegations of Paragraph 21.

22. Admits the allegations of Paragraph 22.

23. Admits the allegations of Paragraph 23.

24. Trimod lacks sufficient knowledge and information to form a belief regarding truth of the allegations contained in Paragraph 24.

25. Admits the allegations of Paragraph 25.

26. Admits the allegations of Paragraph 26.

**DISCOVERY TIER**

27. Admits the allegations of Paragraph 27.

**GENERAL ALLEGATIONS**

28. Admits the allegations of Paragraph 28.

29. Denies the allegations of Paragraph 29.

30. Denies the allegations of Paragraph 30.

31. Answering Paragraph 31, admits only that ARM has failed to pay the subcontractors listed in said paragraph and that such subcontractors have recorded mechanic's and materialman's liens against the Subject Property. Affirmatively alleges that Trimod has paid ARM all amounts due under the Contract.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract – Trimod)**

32.    Answering Paragraph 32, Trimod incorporates herein by reference each of its responses to Paragraphs 1-31 of ARM's complaint.

33.    Denies the allegations of Paragraph 33.

34.    Denies the allegations of Paragraph 34.

35.    Denies the allegations of Paragraph 35.

36.    Answering Paragraph 36, admits only that Section 13.3 of the Contract provides that the prevailing party in any arbitration or litigation shall be entitled its attorneys' fees.  Denies that ARM is the prevailing party.

37.    Answering Paragraph 37, admits only that Section 13.3 of the Contract provides that the prevailing party in any arbitration or litigation shall be entitled to its arbitrator and expert witness costs.  Denies that ARM is the prevailing party.

38.    Answering Paragraph 38, admits only that Section 12.3 of the Contract provides for interest on past due amounts at the rate of 8% per annum.  Denies that any amounts are due ARM under the Contract.

39.    Answering Paragraph 39, admits only that this action arises out of contract that the prevailing party will be eligible for an award of its attorneys' fees pursuant to A.R.S. § 12-341.01.  Denies that ARM is the prevailing party.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment – Trimod)

40.    Answering Paragraph 40, Trimod incorporates herein by reference each of its responses to Paragraphs 1-39 of ARM's complaint.

41.    Denies the allegations of Paragraph 41.

42.    Denies the allegations of Paragraph 42.  Affirmatively alleges that ARM has been paid all amounts due under the Contract for any benefits ARM has bestowed upon Trimod.

43.    Denies the allegations of Paragraph 43.

44.    Trimod lacks sufficient knowledge and information to form a belief regarding truth of the allegations contained in Paragraph 44.

45.    Answering Paragraph 45, admits only that this action arises out of contract that the prevailing party will be eligible for an award of its attorneys' fees pursuant to A.R.S. § 12-341.01.  Denies that ARM is the prevailing party.

## THIRD CLAIM FOR RELIEF
### (Mechanics' Lien Foreclosure – All Defendants)

46.    Answering Paragraph 46, Trimod incorporates herein by reference each of its responses to Paragraphs 1-45 of ARM's complaint.

47.    Answering Paragraph 47, admits on that ARM recorded a notice and claim of lien against the Subject Property with the Maricopa County Recorder at Document No.

- 6 -

20250241945 on April 29, 2025, and that a true and correct copy of said lien is attached to ARM's complaint as Exhibit B.  Denies that such lien is valid.

48.     Denies the allegations of Paragraph 48.

49.     Denies the allegations of Paragraph 49.

50.     Denies the allegations of Paragraph 50.

51.     Answering Paragraph 51, admits only that copies of the preliminary notices referenced in Paragraphs 48 and 49 are attached to the lien.

52.     Denies the allegations of Paragraph 52.

53.     Denies the allegations of Paragraph 53.

54.     Denies the allegations of Paragraph 54.

55.     Denies each and every allegation not expressly admitted herein.

## ARBITRATION

The claims ARM has asserted against Trimod are subject to arbitration pursuant to Section 13.2 of the Contract.  By filing this answer, Trimod is not waiving its right to demand arbitration.  ARM's counsel has expressed a willingness to arbitrate its disputes with Trimod, however, in the event a formal stipulation to stay this proceeding pending arbitration is not forthcoming, Trimod will be filing a motion to compel arbitration and stay this proceeding pursuant to A.R.S. § 13-3007.

## AFFIRMATIVE DEFENSES

Trimod asserts that ARM's claims subject to arbitration, hereby requests that the matter be stayed pending arbitration, and asserts that Plaintiff's claims are barred in whole

- 7 -

or in part by the following affirmative defenses: (1) failure to state a claim upon which relief can be granted; (2) payment; (3) ARM's first material breach; and (4) each and every affirmative defense set forth in Rule 8(d), *Arizona Rules of Civil Procedure*, which may hereafter be supported by the evidence disclosed or discovered in this case. Trimod reserves the right to plead or disclose further affirmative defenses if and when discovery or disclosure reveals sufficient facts to support such other and further defenses.

WHEREFORE, having fully answered ARM's complaint, Trimod respectfully requests that the same be dismissed with prejudice, that ARM take nothing thereby, and that Trimod be awarded its costs and reasonable attorneys' fees incurred in defending this action pursuant to Section 13.3 of the Contract, A.R.S. § 12-341, A.R.S. § 12-341.01, A.R.S. § 33-998(B), and any other applicable statute.

## COUNTERCLAIM

For its counterclaim against A.R. Mays Construction, Inc. ("ARM"), Trimod Aileron Property LLC ("Trimod") states and alleges as follows:[1]

1. Trimod is a Delaware limited liability company which is duly authorized to transact business within the State of Arizona.

---

[1] With the exception of Trimod's claims based on A.R.S. § 33-420, the claims asserted against ARM herein are already the subject of an existing arbitration proceeding between the parties. By filing this counterclaim, Trimod does not intend to waive its right to arbitrate such claims. The purpose of this counterclaim is simply to preserve Trimod's claims in the event the pending arbitration is dismissed without the resolution of such claims.

2.    Trimod is the owner of a parcel of real property located in Maricopa County, Arizona, commonly known as 20350 North 7th Avenue, Phoenix, Arizona ("Subject Property").

3.    ARM is an Arizona corporation and licensed contractor which conducts business and maintains offices in Maricopa County, Arizona.

4.    This Court has jurisdiction over this matter and venue is proper before this Court.

**COUNT ONE – BREACH OF CONTRACT**

5.    On or about February 23, 2022, Trimod and ARM entered into a written contract whereby ARM agreed to construct an apartment complex and related facilities upon the Subject Property on a cost-plus basis.

6.    Trimod fulfilled all of its duties and obligations under its contract with ARM.

7.    ARM breached its contract with Trimod by, *inter alia*: (1) failing to pay its subcontractors; (2) failing to defend against mechanic's and materialman's liens recorded against the Subject Property by ARM's subcontractors; (3) failing to timely complete its work; (4) performing deficient and defect work; (5) mismanaging the project; (6) failing to mitigate project costs; and (7) inflating project costs.

8.    As a result of ARM's breaches, Trimod has suffered damages in an amount which will be proven at the time of trial but is alleged to exceed the amount requested by ARM in its complaint.

- 9 -

9. Trimod is entitled to recover its costs and reasonable attorneys' fees pursuant to Section 13.3 of the parties' contract as well as A.R.S. § 12-341 and A.R.S. § 12-341.01.

### COUNT TWO – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

10. Trimod incorporates herein by reference each of the allegations previously set forth in this counterclaim.

11. Under Arizona law, a covenant of good faith and fair dealing is implied in every contract which requires that neither party do anything that prevents the other party from receiving the benefits of their agreement.

12. ARM breached the implied covenant of good faith and fair dealing by, *inter alia*: (1) mismanaging the project; (2) failing to take reasonable measures to mitigate project costs; and (3) inflating the cost of the project and its corresponding fee.

13. As a result of ARM's breach, Trimod has suffered damages in an amount which will be proven at the time of trial but is alleged to exceed the amount requested by ARM in its complaint.

### COUNT THREE – A.R.S. § 33-430(A)

14. Trimod incorporates herein by reference each of the allegations previously set forth in this counterclaim.

15. On April 29, 2025, ARM recorded a mechanic's and materialman's lien in the amount of $8,332,552.49 against the Subject Property.

- 10 -

16.     The lien recorded by ARM was invalid and contained one or more material misstatements or false claims.

17.     Upon information and belief, ARM knew that its lien was invalid and contained one or more material misstatements or false claims at the time it was recorded.

18.     Pursuant to A.R.S. § 33-420(A), Trimod is entitled to damages equal to the greater of $5,000.00 or treble Trimod's actual damages caused by the recording of the invalid lien as well as its costs and reasonable attorneys' fees.

### COUNT FOUR – A.R.S. § 33-420(C)

19.     Trimod incorporates herein by reference each of the allegations previously set forth in this counterclaim.

20.     On August 26, 2025, Trimod requested in writing that ARM remove the invalid lien ARM recorded against Subject Property within twenty days.

21.     ARM failed to release its invalid lien against the Subject Property within twenty days of the aforementioned demand.

22.     Pursuant to A.R.S. § 33-420(C), Trimod is entitled to damages equal to the greater of $1,000.00 or treble Trimod's actual damages due to ARM's failure to release its lien as well as Trimod's costs and reasonable attorneys' fees.

WHEREFORE, Trimod respectfully requests that this Court enter judgment against ARM and in favor of Trimod in the following respects:

A.     For compensatory damages resulting from ARM's breach of the parties' contract;

- 11 -

B.     For compensatory damages resulting from ARM's breach of the implied covenant of good faith and fair dealing;

C.     For damages equal to the greater of $5,000.00 or treble Trimod's actual damages caused by the recording of ARM's invalid lien;

D.     For damages equal to the greater of $1,000.00 or treble Trimod's actual damages due to ARM's failure to release its lien;

E.     For Trimod's reasonable attorney's fees pursuant to the parties' contract, A.R.S. § 12-341.01, A.R.S. § 33-420(A), and A.R.S. § 33-420(C);

F.     For Trimod's costs pursuant to the parties' contract, A.R.S. § 12-341, A.R.S. § 33-420(A), and A.R.S. § 33-420(C); and

G.     For such other and further relief as this Court deems just and proper under the circumstances.

DATED this 24th day of September, 2025.

ELLSWORTH COBB PLC

By: */s/ Richard L. Cobb*
Richard L. Cobb
*Attorneys for Trimod Aileron Property LLC*

- 12 -

ORIGINAL filed and copy of the forgoing
sent by email this 24th day of September, 2025, to:

Robert O. Dyer, Esq.
4520 E. Joshua Tree Lane
Paradise Valley, Arizona 85253
robsslam1430@gmail.com

*Attorneys for A.R. Mays Construction, Inc.*

Jamie L. Mayrose, Esq.
M. Craig Murdy, Esq.
RADER MAYROSE, LLP
812 N. Second Avenue
Phoenix, AZ 85003
jmayrose@radermayrose.com
cmurdy@radermayrose.com

*Attorneys for Little Enterprises, Inc.*
*d/b/a Stone Cold Masonry*

Stephen E. Jackson, Esq.
Stephen Fong, Esq.
WARNER ANGLE HALLAM JACKSON
    & FORMANEK PLC
2555 E. Camelback Rd., Suite 800
Phoenix, AZ 85016
sjackson@warnerangle.com
sfong@watneragngle.com

*Attorneys for Republic National Industries*
*of Texas, LP and Crown Cabinet, LLC*

Kenneth Januszewski, Esq.
Andrew Miller, Esq.
Katelyn E. Towe, Esq.
BURCH & CRACCHIOLO, P.A.
1850 N. Central Ave., Suite 1700
Phoenix, Arizona 85004
kenj@bcattorneys.com
amiller@bcattorneys.com
ktowe@bcattorneys.com

*Attorneys for Design Plastering Inc.*

- 13 -

Richard B. Murphy, Esq.
Chase E. Halsy, Esq.
MURPHY CORDIER CASALE AXEL PLC
4647 N. 32nd Street, Suite 150
Phoenix, Arizona 85018
rich@mccalaw.com
chase@mccalaw.com

*Attorneys for Danco Plumbing, Inc.*

James B. Reed, Esq.
UDALL SHUMWAY
1138 N. Alma School Rd., Suite 101
Mesa, Arizona 85201
jbr@udallshumway.com

*Attorneys for The Sherwin-Williams Company*

Richard C. Gramlich, Esq.
TIFFANY & BOSCO P.A.
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016-4237
rcg@tblaw.com
minute entries@tblaw.com

*Attorneys for 1 Twenty Electric LLC*

Christopher L. Hering, Esq.
Ivan Gonzalez, Esq.
GAMMAGE & BURNHAM, P.L.C.
40 North Central A venue, 20th Floor
Phoenix, AZ 85004
chering@gblaw.com
igonzalez@gblaw.com
docket@gblaw.com

*Attorneys for R.A.P.I. Ltd.*

- 14 -

Julianne C. Wheeler, Esq.
WHEELER LAW GROUP, PLLC
1490 S. Price Road, Suite 203
Chandler, AZ 85286-6800
jcw@wheelerlawgroup.law

*Attorneys for Central Valley Specialties, LLC*

Kent A. Lang, Esq.
Andrew J. Wenker, Esq.
LANG THAL KING & HANSON, PC
6730 N. Scottsdale Road, Suite 101
Scottsdale, AZ 85253
filing@lang.law
klang@lang.law
awenker@lang.law

*Attorneys for KDM Contracting, Inc.*

Thomas A. Maraz, Esq.
Chelsea L. Gulinson, Esq.
19 MILLIGAN LAWLESS, PC
5050 N. 40th Street, Suite 200
Phoenix, AZ 85018
Tom.Maraz@MilliganLawless.com
Chelsea@MilliganLawless.com

*Attorneys for Advanced Construction Southwest of Arizona, Inc.*

By: */s/ Natalie A. Rodriguez*

- 15 -

# EXHIBIT 3



# TEXAS INSURANCE COMPANY

ASC 00 06 05 21

NAIC No. 16543
10825 Old Mill Road, Omaha, NE 68154
877-234-4420

## COMMON POLICY DECLARATIONS

1. Policy No. **TI22PWUP-01481-01**  Renewal of Policy No. **N/A**

2. Named Insured **Trimod Aileron Property, LLC**

3. Mailing Address **6900 E Indian School Rd, Suite 200**
**Scottsdale, AZ 85251**

4. Broker **RT Specialty, LLC**

5. Business Description **Contractors – subcontracted work – in connection with construction, reconstruction, repair or erection of buildings – NOC**

6. Forms applicable to all coverage parts: See Schedule of Forms and Endorsements ASC 00 05 09 20.

7. The policy period is from **03/01/2022 to 09/01/2024** at 12:01 A.M. Standard Time at the insured's mailing address.

8. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

|  | Premium |
|---|---|
| Commercial General Liability Coverage Part | **$ 2,000,000** |
| Products/Completed Operations Liability Coverage Part | **$ 2,000,000** |
| Excess Liability Coverage Part | **N/A** |
| Owners and Contractors Protective Coverage Part | **N/A** |
| Railroad Protective Coverage Part | **N/A** |
| Liquor Liability Coverage Part | **N/A** |
| Employee Benefits Liability Coverage Part | **N/A** |
| Terrorism Risk Insurance Act – Certified Acts Coverage | ███ |
| Total Premium | ███ |
| Policy Fee | **N/A** |
| Engineering Fee | ███ |
| Policy Total | ███ |

9. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

10. Countersigned by:

_____05/12/2022_____
Date                                                   Authorized Representative

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASC 00 02 09 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

This endorsement modifies this policy with the addition of the following:

It is understood and agreed that in the event of a failure by us to pay any amount claimed to be due hereunder, we, at the request of the first named insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America. The foregoing shall not constitute a waiver of any of our rights to remove, remand, or transfer such suit to any other court pf competent jurisdiction in accordance with the applicable statutes of the United States of America or any state therein.  In any suit instituted against us upon this contract by said court, we will abide by the final decision of the court or of any appellate court in the event of an appeal.

Pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the company hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the Statute, or his successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured(s) or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the below named as the person whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process may be made upon Jeff Silver, Legal Department, Applied Specialty Underwriters, LLC., 10805 Old Mill Road, Omaha, NE 68154, or his or her representative, as the receiver of said process in which a cause of action under this contract of insurance arises.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**ASC 00 03 09 20**

# APPLIED SPECIALTY UNDERWRITERS, LLC.

# PRIVACY STATEMENT

To provide our products and services to you, we must collect, use, and share information about you. This Privacy Notice describes policies and practices about how we protect, collect and share information related to the financial products and services you receive from us.

### We Protect Your Information By:

- Using security measures to protect your information from unauthorized access or use in accordance with state and federal requirements;
- Training employees to safeguard information and restricting access to information to those employees who need it to perform their job functions;
- Contractually requiring business partners with whom we share your information to safeguard it and use it exclusively for the purpose for which it was shared.

### Information We Collect May Include:

- Information that you provide to us on applications or forms, during conversations with us or our representatives;
- Information about your transactions with us;
- Information from third parties such as consumer or other reporting agencies or other institutions;
- Information obtained during the claim adjustment process.

### We May Share All of the Information We Collect, as Described Above, With:

- Employees who provide our products and services to you;
- Our affiliated companies;
- Reinsurers;
- Entities who perform marketing or administrative services for us;
- Entities who perform risk management or claim mitigation services;
- Entities who provide claim adjustment services;
- Courts and government agencies in response to court orders or legal investigations;
- Credit bureaus.

Other than as described above, we will only share your information as permitted by law and if the law requires us to give your consent or give you the opportunity to opt out of some types of sharing, we will allow you the option to opt out before sharing the information.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ASC 00 04 09 20

# CLAIM REPORTING

As a condition of this policy, you are required notify us as soon as practicable of an "occurrence" or an offense which may result in a claim and written notice of a of a claim or "suit" as soon as practicable.

All claim notices must be sent as soon as practicable to:

newclaim@auw.com

Alternatively claims may be mailed to:

Applied Specialty Underwriters, LLC.
Attn: Claims Department
P.O. Box 3216
Omaha, NE  68103-0216

All claims must be reported using an Acord loss form or equivalent and should contain a detailed description of the loss as well as contact information for the insured and the potential claimant(s).

If the insured files a claim with the broker, it is the broker's responsibility to forward the claim to Applied Specialty Underwriters, LLC.

If you have questions about a claim, please call:

1-877-234-4420, Option 1

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**POLICY NUMBER: TI22PWUP-01481-01**  　　　　　　　　　　　　　　**ASC 00 05 09 20**

# SCHEDULE OF FORMS AND ENDORSEMENT

| Form No. | Form Description |
|---|---|
| ASC 00 06 05 21 | Common Policy Declarations (TIC) |
| ASC 00 02 09 20 | Service of Suit |
| ASC 00 03 09 20 | Privacy Statement |
| ASC 00 04 09 20 | Claim Reporting |
| ASC 00 05 09 20 | Schedule of Forms and Endorsements |
| IL 00 17 11 98 | Common Policy Conditions |
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion Endorsement |
| IL P 001 01 04 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| ASG 01 02 05 21 | Commercial General Liability Coverage Part Declarations (TIC) |
| CG 00 01 04 13 | Commercial General Liability Coverage Form |
| ASG 03 01 09 20 | Named Insured Schedule |
| CG 21 07 05 14 | Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - With Limited Bodily Injury Exception Not Included |
| CG 21 91 01 06 | Exclusion of Terrorism Involving Nuclear, Biological or Chemical Terrorism |
| CG 21 71 01 15 | Exclusion of Other Acts of Terrorism Committed Outside the United States; Cap On Losses From Certified Acts Of Terrorism |
| IL 09 85 12 20 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| CG 21 65 12 04 | Total Pollution Exclusion With A Building Heating, Cooling, And Dehumidifying Equipment Exception And A Hostile Fire Exception |
| CG 21 09 06 15 | Exclusion - Unmanned Aircraft |
| CG 21 32 05 09 | Communicable Disease Exclusion |
| CG 21 35 10 01 | Exclusion - Coverage C - Medical Payments |
| CG 21 47 12 07 | Employment-Related Practices Exclusion |
| CG 21 52 04 13 | Exclusion - Financial Services |
| CG 21 67 12 04 | Fungi Or Bacteria Exclusion |
| CG 21 86 12 04 | Exclusion - Exterior Insulation And Finish Systems |
| CG 21 96 03 05 | Silica Or Silica-Related Dust Exclusion |
| CG 22 34 04 13 | Exclusion - Construction Management Errors and Omissions |
| CG 22 79 04 13 | Exclusion - Contractors - Professional Liability |
| CG 23 01 04 13 | Exclusion - Real Estate Agents Or Brokers Errors Or Omissions |
| ASG 07 02 09 20 | Exclusion – Cyber Injury |
| ASG 03 02 09 20 | Intellectual Property Amendment |
| ASG 07 01 10 21 | Exclusion - Property Damage to Designated Project Site During the Course of Construction |
| ASG 03 03 09 20 | Minimum Earned Premium and Audit Premium |

| ASG 03 04 09 20 | Amendment Of Other Insurance Provision – Excess Insurance |
|---|---|
| ASG 03 05 09 20 | Definition of Occurrence |
| ASG 03 15 09 20 | Deductible Liability Endorsement |
| ASG 03 06 09 20 | Separation of Insureds - Joint Defense |
| ASG 03 13 09 20 | Amendment of Definition - Employee |
| ASG 07 03 09 20 | Exclusion - Asbestos |
| ASG 07 04 09 20 | Exclusion - Lead |
| ASG 07 05 09 20 | Exclusion - Arsenic |
| ASG 07 06 09 20 | Exclusion - Sulfates |
| ASG 07 07 09 20 | Exclusion - Formaldehyde |
| ASG 03 07 09 20 | Definition of Basis of Exposure (Construction Costs) |
| ASG 03 08 09 20 | Amendment of Duties – Knowledge and Notice Of An Occurrence |
| ASG 03 10 09 20 | Unintentional Failure to Disclose Hazards |
| ASG 07 11 05 21 | Exclusion - Residential Construction and Conversion With Apartment Exception |
| ASG 09 07 09 20 | Map of Designated Project Site |
| ASG 09 09 09 21 | Wrap-Up Amendatory Endorsement |
| ASG 09 02 09 21 | Wrap-Up - Named Insured (Enrolled Contractors) |
| ASG 09 03 09 20 | First Named Insured - Rights and Duties |
| ASG 09 15 05 21 | Limited Premises Operation Coverage – Repair Work |
| ASG 07 39 05 21 | Exclusion – Cross Suits Liability  - Applicable to Property Damage Only With Exception For Designated Entity |
| ASG 03 12 10 21 | Amendment – Who Is An Insured |
| ASG 03 27 10 21 | Primary and Non-Contributory – Other Insurance (Project Specific and Wrap-Up) |
| ASG 09 11 01 21 | General Aggregate Limit Reinstatement |
| CG 24 53 12 19 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us (Waiver of Subrogation) – Automatic |
| ASG 03 25 5 21 | Notice of Cancellation to Designated Entities |
| CG 20 10 12 19 | Additional Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization |
| CG 20 37 12 19 | Additional Insured – Owners, Lessees Or Contractors – Completed Operations |
| CG 20 18 12 19 | Additional Insured - Mortgagee, Assignee Or Receiver |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98          Copyright, Insurance Services Office, Inc., 1998          **Page 1 of 1**

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion

      of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material". "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

IL 00 21 09 08        © Insurance Services Office, Inc., 2007        **Page 1 of 2**

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)**  Any "nuclear reactor";

**(b)**  Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)**  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material"

if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)**  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL P 001 01 04                  © ISO Properties, Inc., 2004                  **Page 1 of 1**



# TEXAS INSURANCE COMPANY

NAIC No. 16543
10825 Old Mill Road, Omaha, NE 68154
877-234-4420

ASG 01 02 05 21

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

1. Policy No.     **TI22PWUP-01481-01**              Renewal of Policy No.   **N/A**

2. These declarations, together with the Common Policy Conditions and Coverage Form(s) and any Endorsement(s), complete the above numbered policy.

3. Form of Business:    [ ] Individual    [ ] Partnership    [ ] Joint Venture    [ ] Trust    [**x**] Limited Liability Company
   [ ] Organization, including corporation (not partnership, joint venture or limited liability company)

4. Business Description:    **Contractors – subcontracted work – in connection with construction, reconstruction, repair or erection of buildings – NOC**

5. Limits of Insurance:

| | | |
|---|---|---|
| Each Occurrence Limit | $ **2,000,000** | |
| General Aggregate Limit (other than Products/Completed Operations) | $ **2,000,000** | |
| Products/Completed Operations Aggregate Limit | $ **2,000,000** | |
| Personal and Advertising Injury Limit | $ **1,000,000** | Any one person or organization |
| Damage to Premises Rented to You Limit | $ **50,000** | Any one premises |
| Medical Expense Limit | **EXCLUDED** | Any one person |

6. Classification and Premium:

| Classification | Rating Basis | Exposure | Rate | Advance Premium |
|---|---|---|---|---|
| **91585 – Contractors – subcontracted work – in connection with construction, reconstruction, repair or erection of buildings – NOC** | **Construction Cost** | ███████ | ████ | ██████ |
| | | | | ██████ |

7. Endorsements:   See Schedule of Forms and Endorsements ASC 00 05 09 20.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 © Insurance Services Office, Inc., 2012

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

  © Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COMMERCIAL GENERAL LIABILITY**
**CG 00 01 04 13**

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012

**2.** Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   **(1)** "Bodily injury" or "personal and advertising injury":

   **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

   **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

   **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

   **(d)** Arising out of his or her providing or failing to provide professional health care services.

   **(2)** "Property damage" to property:

   **(a)** Owned, occupied or used by;

   **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

   you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

   **(1)** With respect to liability arising out of the maintenance or use of that property; and

   **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C**;

   **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B.**

 © Insurance Services Office, Inc., 2012

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a. Damages under Coverage **A;** and

    b. Medical expenses under Coverage **C**

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b. If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c. You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

    No person or organization has a right under this Coverage Part:

    a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

    A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 © Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

      Paragraph **f.** does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

 © Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

   (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (a) You;

      (b) Others trading under your name; or

      (c) A person or organization whose business or assets you have acquired; and

   (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

   (1) Work or operations performed by you or on your behalf; and

   (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   (2) The providing of or failure to provide warnings or instructions.

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 01 09 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NAMED INSURED – SCHEDULE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Beyond the Person(s) or Entity(ies) identified as the Named Insured in Item 2. of the Common Policy Declarations, the persons or entities identified in the schedule below shall also be Named Insureds under this Policy:

**SCHEDULE**

- A.R. Mays Construction, Inc.
- Trimod Aileron Investment, LLC
- Force Financial, LLC
- Triumph Properties Group, LLC
- Moderne Capital Partners II, LLC
- Casa Oaks Investment Company, LLC

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CG 21 07 05 14                © Insurance Services Office, Inc., 2013                **Page 1 of 1**

COMMERCIAL GENERAL LIABILITY
CG 21 91 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

**B.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 21 71 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **a.** Physical injury that involves a substantial risk of death; or

   **b.** Protracted and obvious physical disfigurement; or

   **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or

      (2) Outside of the United States in the case of:

         (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         (b) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

   Multiple incidents of an "other act of terrorism" which occur within a seventy-two-hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

POLICY NUMBER: **TI22PWUP-01481-01**

**COMMERCIAL GENERAL LIABILITY**
**IL 09 85 12 20**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)** ██████ |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| **General Liability Coverage Part** |
| **Additional information, if any, concerning the terrorism premium: N/A** |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses** ████      ___████___ |
| (Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
| --- |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**IL 09 85 12 20**          © Insurance Services Office, Inc., 2020          **Page 1 of 2**

POLICY NUMBER: **TI22PWUP-01481-01**

COMMERCIAL GENERAL LIABILITY
**IL 09 85 12 20**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 © Insurance Services Office, Inc., 2020

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CG 21 65 12 04                    © ISO Properties, Inc., 2003                    **Page 1 of 1**

**COMMERCIAL GENERAL LIABILITY**
**CG 21 09 06 15**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g.  Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence"

which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(e)** "Bodily injury" or "property damage" arising out of:

**(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(ii)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Unmanned Aircraft**

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

**a.** The use of another's advertising idea in your "advertisement"; or

**b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

 © Insurance Services Office, Inc., 2014

**COMMERCIAL GENERAL LIABILITY**
**CG 21 32 05 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

POLICY NUMBER: **TI22PWUP-01481-01**

**COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Description And Location Of Premises Or Classification: Any location or job/work site.** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

**1.** Section **I** – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

**2.** The following is added to Section **I** – Supplementary Payments:

**h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – FINANCIAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" resulting from the rendering of or the failure to render financial services by any insured to others. For the purpose of this exclusion, financial services include but are not limited to:

1. Planning, administering or advising on:

    a.  Any:

    (1) Investment;

    (2) Pension;

    (3) Annuity;

    (4) Savings;

    (5) Checking; or

    (6) Individual retirement;

    plan, fund or account;

    b.  The issuance or withdrawal of any bond, debenture, stock or other securities;

    c.  The trading of securities, commodities or currencies; or

    d.  Any acquisitions or mergers;

2. Acting as a dividend disbursing agent, exchange agent, redemption or subscription agent, warrant or scrip agent, fiscal or paying agent, tax withholding agent, escrow agent, clearing agent, or electronic funds transfer agent;

3. Lending, or arranging for the lending of, money, including credit card, debit card, leasing or mortgage operations or activities or interbank transfers;

4. Repossessing of real or personal property from a borrower or acting as an assignee for the benefit of creditors;

5. Checking or reporting of credit;

6. Maintaining of financial accounts or records;

7. Tax planning, tax advising or the preparation of tax returns; or

8. Selling or issuing traveler's checks, letters of credit, certified checks, bank checks or money orders.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render financial services by any insured to others.

      © Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc.,  2003

**COMMERCIAL GENERAL LIABILITY**
**CG 21 86 12 04**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

**CG 21 86 12 04**                    © ISO Properties, Inc., 2003                    **Page 1 of 1**

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

   © ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 22 34 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **1.** or **2.**

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

COMMERCIAL GENERAL LIABILITY
CG 22 79 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

© Insurance Services Office, Inc., 2012

**COMMERCIAL GENERAL LIABILITY**
**CG 23 01 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – REAL ESTATE AGENTS OR BROKERS ERRORS OR OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any misrepresentation, error or omission by you or any real estate agent or broker who is either employed by you or performing work on your behalf in such capacity.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved any misrepresentation, error or omission by you or any real estate agent or broker who is either employed by you or performing work on your behalf in such capacity.

         © Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
ASG 07 02 09 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CYBER INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE** and **COVERAGE B - PERSONAL AND ADVERTISING INJURY, 2. Exclusions:**

This insurance does not apply to:

1. "bodily injury", "personal and advertising injury" or "property damage" arising out of a "cyber injury"; or
2. any loss cost or expense incurred by you or others arising out of any:

   a.  request, demand, order or statutory or regulatory requirement that any insured or others monitor, notify or in any way respond to an actual or alleged "cyber injury;"
   b.  Claim or "suit" by or on behalf of a governmental authority for damages because of monitoring, notifying or in any way responding to a "cyber injury"

The following is added to **SECTION V – DEFINITIONS**:

1. "Cyber injury" means any actual or suspected intentional or unintentional breach of data, software or hardware, where ever located, which results in:
   a. Loss, destruction, disclosure, disruption, inspection, modification, recording, release, review or use of "personal information";
   b. Inability to access any website or electronic system;
   c. Release, introduction or initiation of any "malicious code";
   d. Forensic or investigative expenses;
   e. Extortion or terrorist threats;
   f. Monitoring or notification costs and expenses;
   g. Crisis management and public relations expenses;
   h. Data system recovery, repair, replacement or restoration expenses; or
   i. Business interruption expenses.
2. "Malicious code" includes, but is not limited to, any virus, Trojan horse, malware, worm, spyware, logic bomb or other similar software program.
3. "Personal information" means any personal or personally identifiable or identifying information, as defined by any federal, state or local laws, statutes or regulations.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 07 02 09 20**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

COMMERCIAL GENERAL LIABILITY
ASG 03 02 09 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INTELLECTUAL PROPERTY AMENDMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I – COVERAGES - COVERAGE B PERSONAL ANO ADVERTISING INJURY LIABILITY, 2. EXCLUSIONS**, Paragraph **i. Infringement of Copyright, Patent, Trademark or Trade Secret** is deleted and replaced with the following:

i.    **Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Advertising Ideas**

"Personal and Advertising Injury" arising out of:
a. Infringement. disparagement, dilution. diminishment of or damage to:
   (1) Copyright, slogan or title;
   (2) Patent;
   (3) Trademark, service mark, collective mark. or certification mark, including but without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service;
   (4) Trade secret;
   (5) Trade dress including without limitation. any shape. Color, design or appearance used to distinguish the origin of a good, product or service;
   (6) Advertising ideas, concepts, campaigns. or style of doing business; or
   (7) Any other intellectual property rights recognized or implied by law:
b. False designation of the origin of a good, product or service.

**SECTION IV – DEFINITIONS, 14. "Personal and Advertising Injury"** is deleted and replaced with the following:

14. "Personal and advertising injury means injury including consequential "bodily injury" arising out of one or more of the following offenses:
   a. False arrest. detention or imprisonment;
   b. Malicious prosecution:
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord lessor;
   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
   e. Oral or written publication of material that violates a person's right of privacy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 07 01 10 21**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION- PROPERTY DAMAGE TO THE DESIGNATED PROJECT SITE DURING THE COURSE OF CONSTRUCTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY - Paragraph 2. Exclusions:**

This insurance does not apply to any "property damage" to the "Designated Project Site" that occurs during the course of construction.  The "Designated Project Site" will be deemed to be within the course of construction until "your work" is deemed completed in accordance with the definition of "products-completed operations hazard" within this Policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ASG 07 01 10 21          Includes information from Insurance Services Office, Inc.,          **Page 1 of 1**
with its permission

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 03 09 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM AND AUDIT PREMIUM

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Item **5.** of section **A**. **Cancellation of the Common Policy Conditions** is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

   a. If we cancel, the refund will be pro rata.

   b. If cancelled at the request of the First Named Insured:
   This policy is subject to a Minimum Earned Premium which is 25% of the premium for this policy as shown in the applicable Coverage Part(s) Declarations unless scheduled here otherwise (100%). This Minimum Earned Premium is the least amount of premium we shall retain as earned premium, regardless of the term. If the first Named Insured cancels, the refund will be determined as follows:

   1) If, at the time of cancellation, the earned premium is greater than the Minimum Earned Premium, the refund will be 90% of the pro rata return.

   2) If at the time of cancellation, the earned premium is equal to or less than the Minimum Earned Premium, the refund will be the premium paid in excess of the Minimum Earned Premium.

   3) If this policy is a project specific policy with a term in excess of one year, the policy premium will be fully earned and no premium will be returned at the time of project completion or 12 months after inception of the policy, whichever occurs earlier.  Project completion shall be defined by the Wrap-Up Amendatory endorsement or the Project Specific Amendatory endorsement attached to the policy.

   4) Cancellation for non-payment of premium be considered cancellation at the request of the First Named Insured.

**B.** If this Policy is subject to premium audit. paragraph **b**. of Item **5. Premium Audit** in **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is replaced by the following:

   b. Premium shown in the Commercial General Liability Coverage Part Declarations as Advance Premium is a deposit premium only which will be credited toward the amount of earned premium. The Advance Premium is is payable in full at the inception of coverage and is not refundable. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the First Named Insured.

   This Policy has a minimum amount of premium that applies to the term of insurance as listed on the policy. Unless otherwise stated, the minimum premium is equal to the advance and deposit premium as shown in the declarations, adjusted for subsequent endorsements. In the event that audit premiums are greater than the advance and deposit premium, the additional premium is due upon notice to the insured. If audit premiums are less than the deposit, then the Company shall retain the advance and deposit premium.

   The minimum term premium is 100% of the advanced and deposit premium as stated in the policy declarations.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAINED UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 04 09 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF OTHER INSURANCE PROVISION – EXCESS INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Under SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, Condition 4. Other Insurance, b. Excess Insurance (1) (a) (i) and (1) (b)** are deleted and replaced by the following

**(1)  (a) (i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, Construction All Risks (CAR), Erection All Risks, (EAR), Course of Construction (COC), Delay in Completion, Delay in Start Up (DSU), property inland marine, or similar coverage for "your work."

**(1) (b)** Any other primary, excess or umbrella insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY
ASG 03 05 09 20**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEFINITION OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION V – DEFINITIONS 13. "Occurrence"** is deleted and replaced by the following

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

With respect to coverage provided within the "products-completed operations hazard", "occurrence" is also defined to include "property damage" or "bodily injury" caused by defective construction or faulty workmanship, but only to the extent:

(1) such "property damage" or "bodily injury" results from defective construction or faulty workmanship;

(2) such "property damage" or "bodily injury" was unexpected or unintended from the standpoint of the insured; and

(3) "your work" was performed pursuant to a written contract

The definition of "occurrence" does not include damage to, replacement of, or repair of the defective construction or faulty workmanship itself, nor the labor or materials necessary to repair or replace the same. The definition of "occurrence" does include costs incurred for accessing, removing or replacing any non-defective or non-faulty work, but only to the extent such costs arise out of a claim for "property damage" that is covered by this Policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 15 09 20**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

| Coverage | Basis of Deductible | Amount |
|---|---|---|
| Coverages A and B | Coverage A: Per Occurrence<br>Coverage B: Per Claim | $ 25,000<br>$ 25,000 |

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to injury or damage for Coverages A and B however caused):

| |
|---|
| *Allocated Loss Expense is Included Within the Retention* |

I.  **DEDUCTIBLES -** Our obligation under Coverages A and B to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the schedule above. The limits of insurance applicable to Coverages A and B will be reduced by the amount of the stated deductible.

II.  The deductible amounts stated in the Schedule apply as follows:

A. **PER CLAIM BASIS** - if the deductible is on a per claim basis indicated above, the deductible amount applies:

1. To all damages because of "bodily injury" sustained by one person.
2. To all damages because of "property damage" sustained by one person or organization, as a result of any one "occurrence".
3. To "personal and advertising injury" sustained by one person or organization as the result of any one "offense".

B. **PER OCCURRENCE BASIS** - if the deductible is on a per occurrence basis indicated above, the deductible amount applies to all damages because of "bodily injury" or "property damage" as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

III.  **LEGAL AND LOSS ADJUSTMENT EXPENSES -** The applicable deductible amount(s) stated in the Schedule of Deductibles above shall also apply to all legal (defense) costs and other "loss adjustment expenses".  Beyond legal costs, "loss adjustment expenses" include all expenses associated with the investigation, adjustment and resolution of a specific claim, including, but not limited to, those related to independent adjusters, private investigators, experts, surveillance, service of process and medical examinations.

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 15 09 20**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

IV.    **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

The applicable deductible amount(s) stated in the Schedule of Deductibles above shall also apply to all payments made under **SUPPLEMENTARY PAYMENTS - COVERAGES A and B**.

V.    The terms of this insurance, including those with respect to:

a.  Our right and duty to defend any claims or "suits" seeking those damages; and

b.  Your duties in the event of an "occurrence", claim, or "suit",

apply regardless of the application of the deductible amount.

VI.    We may pay any or all of the deductible amount to affect the settlement of any claim or "suit", or pay legal and loss adjustment expenses, or make any payments under **SUPPLEMENTARY PAYMENTS — COVERAGES A AND B**. Upon notification of the action taken, you shall promptly reimburse us for the deductible amount which has been paid by us.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 06 09 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SEPARATION OF INSUREDS – JOINT DEFENSE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, Paragraph 7.  Separation of Insureds**, subparagraph **b.** is deleted and replaced with the following**:**

**b**. Separately to each insured against whom claim is made or "suit is brought, however:

(1) If we are required to defend more than one insured against the same claim or "suit, we shall have the right to retain the same counsel to defend all insureds.  This condition will not apply to any insured where a conflict of interest exists and/or when a conflict of interest arises.

(2) If a conflict of interest exists, to the extent permitted by law, we may assign the same counsel to any insureds that waive the right to separate counsel in writing.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 13 09 20**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF DEFINITION – EMPLOYEE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION V – DEFINITION, 5. "Employee"** is deleted and replaced with the following**:**

    **5.** "Employee" includes a "leased worker" and "temporary worker".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

COMMERCIAL GENERAL LIABILITY
ASG 07 03 09 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2., Exclusions** of **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (**SECTION I – COVERAGES**):

This insurance does not apply to:

**Asbestos**

(1) "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of asbestos at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, asbestos; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos.

(3) "Bodily injury", arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, asbestos.

(4) "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, asbestos.

The following exclusion is added to paragraph **2., Exclusions of COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** (**SECTION I – COVERAGES**):

This insurance does not apply to:

**Asbestos**

(1) "Personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of asbestos at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of asbestos; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos.

(3) "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, asbestos.

(4) "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, asbestos.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ASG 07 03 09 20          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 1 of 1**
with its permission.

**COMMERCIAL GENERAL LIABILITY**
**ASG 07 04 09 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to **SECTION I – COVERAGES – COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY - Paragraph 2. Exclusions:**

This insurance does not apply to:

(1)  Any "bodily injury" or "property damage" arising out of or caused by the actual, alleged or threatened exposure at any time to a "lead" hazard; or

(2)  Any loss, cost or expense arising out of:

   (a)  Any claim or "suit";

   (b)  Any request, demand or order to test for, monitor, clean up, remove, dispose of, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of a "lead" hazard; or

   (c)  Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of a "lead" hazard.

The following exclusion is added to **SECTION I – COVERAGES - COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY – Paragraph 2. Exclusions:**

This insurance does not apply to:

(1)  Any "personal or advertising injury" or "property damage" arising out of or caused by the actual, alleged or threatened exposure at any time to a "lead" hazard; or

(2) Any loss, cost or expense arising out of:

   a.   Any claim or "suit";

   b.   Any request, demand or order to test for, monitor, clean up, remove, dispose of, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of a "lead" hazard; or

   c.   Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of a "lead" hazard.

COMMERCIAL GENERAL LIABILITY
ASG 07 04 09 20

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The following definition is added to **Section V — Definitions:**

"Lead" means the mineral in any form.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

COMMERCIAL GENERAL LIABILITY
ASG 07 05 09 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ARSENIC

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to **SECTION I – COVERAGES – COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY - Paragraph 2. Exclusions:**

This insurance does not apply to:

(1)  Any "bodily injury" or "property damage" arising out of or caused by the actual, alleged or threatened exposure at any time to an "arsenic" hazard; or

(2)  Any loss, cost or expense arising out of:

(a)  Any claim or "suit";

(b)  Any request, demand or order to test for, monitor, clean up, remove, dispose of, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "arsenic" hazard; or

(c)  Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "arsenic" hazard.

The following exclusion is added to **SECTION I – COVERAGES - COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY – Paragraph 2. Exclusions:**

This insurance does not apply to:

(1)  Any "personal or advertising injury" or "property damage" arising out of or caused by the actual, alleged or threatened exposure at any time to an "arsenic" hazard; or

(2) Any loss, cost or expense arising out of:

(a)  Any claim or "suit";

(b)  Any request, demand or order to test for, monitor, clean up, remove, dispose of, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "arsenic" hazard; or

(c)  Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "arsenic" hazard.

COMMERCIAL GENERAL LIABILITY
ASG 07 05 09 20

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The following definition is added to **Section V — Definitions:**

"Arsenic" means the semi-metal or metalloid in any form.


**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

COMMERCIAL GENERAL LIABILITY
ASG 07 06 09 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – SULFATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to **SECTION I – COVERAGES – COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY - Paragraph 2. Exclusions:**

This insurance does not apply to:

(1)  Any "bodily injury" or "property damage" arising out of or caused by the actual, alleged or threatened exposure at any time to a "sulfates" hazard; or

(2)  Any loss, cost or expense arising out of:

  (a)  Any claim or "suit";

  (b)  Any request, demand or order to test for, monitor, clean up, remove, dispose of, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of a "sulfates" hazard; or

  (c)  Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of a "sulfates" hazard.

The following exclusion is added to **SECTION I – COVERAGES - COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY – Paragraph 2. Exclusions:**

This insurance does not apply to:

(1)  Any "personal or advertising injury" or "property damage" arising out of or caused by the actual, alleged or threatened exposure at any time to a "sulfates" hazard; or

(2) Any loss, cost or expense arising out of:

  (a)  Any claim or "suit";

  (b)  Any request, demand or order to test for, monitor, clean up, remove, dispose of, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of a "sulfates" hazard; or

  (c)  Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "sulfates" hazard.

COMMERCIAL GENERAL LIABILITY
ASG 07 06 09 20

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The following definition is added to **Section V — Definitions:**

"Sulfates" means a salt or ester of sulfuric acid in any form.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 07 07 09 20**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – FORMALDEHYDE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to **SECTION I – COVERAGES – COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY - Paragraph 2. Exclusions:**

This insurance does not apply to:

(1)  Any "bodily injury" or "property damage" arising out of or caused by the actual, alleged or threatened exposure at any time to a "formaldehyde" hazard; or

(2)  Any loss, cost or expense arising out of:

(a)  Any claim or "suit";

(b)  Any request, demand or order to test for, monitor, clean up, remove, dispose of, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of a "formaldehyde" hazard; or

(c)  Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of a "formaldehyde" hazard.

The following exclusion is added to **SECTION I – COVERAGES - COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY – Paragraph 2. Exclusions:**

This insurance does not apply to:

(1)  Any "personal or advertising injury" or "property damage" arising out of or caused by the actual, alleged or threatened exposure at any time to a "formaldehyde" hazard; or

(2) Any loss, cost or expense arising out of:

(a)  Any claim or "suit";

(b)  Any request, demand or order to test for, monitor, clean up, remove, dispose of, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of a "formaldehyde" hazard; or

(c)  Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "formaldehyde" hazard.

COMMERCIAL GENERAL LIABILITY
ASG 07 07 09 20

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The following definition is added to **Section V — Definitions:**

"Formaldehyde" means the organic compound $(CH_2O)$ in any form.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 07 09 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEFINITION OF EXPOSURE BASIS
# (CONSTRUCTION COSTS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, Par. 5.  Premium Audit** is amended to include the following**:**

**d.** For the purposes of calculating premium for this Policy, the exposure basis shall be "construction costs" and the policy rate shall be per ▮▮▮▮ of "construction costs".  "Construction costs" shall include the cost of all construction work, including the cost of labor, materials, services and equipment furnished, used or delivered for use in the execution of all construction work, as well as contractor overhead.  "Construction costs" shall not include the compensation paid to the architect, engineer or consultants, nor the cost of land or any right-of way.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ASG 03 07 09 20          Includes copyrighted material of Insurance Services Office, Inc.          **Page 1 of 1**
with its permission.

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 08 09 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF DUTIES – KNOWLEDGE AND NOTICE OF AN OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, Par. 2. a.** is deleted and replaced with the following**:**

**2.  Duties In The Event of Occurrence, Offense, Claim or Suit**

**a.** Knowledge of an "occurrence" by your agent, servant or "employee" is not considered knowledge by you unless your insurance manager or other designated person has received notice from your agent, servant, or "employee".  You, your insurance manager or any other person you designate, must see to that we or our authorized agents are notified as soon as practicable of   an "occurrence" or offense which may result in a claim. To the extent possible, notice should include:

(1)  How, when and where the "occurrence" took place;

(2)  The names and addresses of any injured persons or witnesses; and

(3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

Your rights under this Coverage Part will not be prejudiced if you fail to give us notice of an "occurrence", offense, claim or suit and that failure is solely due to a reasonable belief that the "bodily injury", "property damage" or "personal and advertising injury" is not covered under this Coverage Part.  This includes your having provided notice of an "occurrence", offense, claim or suit to another type of insurer and you reasonably discover that the "occurrence", offense, claim or suit was or has developed into a General Liability claim. However, you shall provide written notice of such an "occurrence", offense, claim or "suit" to us as soon as you are aware that this insurance may apply to such an "occurrence", offense, claim or suit.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 10 09 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, Paragraph 6.  Representations:**

**d.** The unintentional omission of, or unintentional error in, any information provided by you shall not prejudice your rights under this Policy. However, this provision does not affect our right to collect additional premium or to exercise our right of cancellation or nonrenewal in accordance with applicable state insurance laws or regulations.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 07 11 05 21**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION- RESIDENTIAL CONSTRUCTION AND CONVERSION WITH APARTMENT EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY - Paragraph 2. Exclusions and SECTION I - COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY – Paragraph 2. Exclusions:**

This insurance does not apply to:

(1)  "Bodily injury", "property damage" and "personal and advertising injury" arising out of the construction, reconstruction or remodeling of any "residential property(ies)", except "apartment(s)".

(2)  "Bodily injury", "property damage" and "personal and advertising injury" arising out of the construction of any "apartment(s)", if that apartment" is subsequently converted by you or by anyone else to a "single family home(s), condominium(s), townhome(s), or other multi-family dwelling(s)."

As used in this endorsement, the following terms have the following meanings:

(1)  "Residential property" means any type of real property, be it a "single-family home, condominium, townhome or multi-family dwelling" or "apartment" where people make their residence.  It does not include real property constructed, used or occupied for commercial or retail purposes.

(2)  "Apartment" means a unit of "residential property" in a multi-unit residential building or community, where all of such units (including what might otherwise be considered single family homes or townhomes) are owned by and titled to a single person or entity and held for rent to the public as residences.

(3)  "Single family home(s), condominium(s), townhome(s) or multi-family dwelling(s)" means a unit of "residential property" in a multi-unit residential building or community where each unit is individually owned and titled.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 09 07 09 20**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MAP OF DESIGNATED PROJECT SITE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Attached is a Map of the Designated Project Site provided by the First Named Insured.

.



**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

COMMERCIAL GENERAL LIABILITY
ASG 09 09 09 21

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WRAP-UP AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Project Name: Aileron by Moderne** |
| **Designated Project Site: 20350 N 7th Ave, Phoenix, AZ 85027** |
| **Project Description: CCIP: ground up construction of eleven 2-3 story garden-style apartments with 287 units.** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

1. **SECTION I – COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, Paragraphs b. (1) and (2)** are deleted and replaced by the following:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the "Designated Project Site."

    (2) The "bodily injury" or "property damage" occurs during the policy period, except for "bodily injury" or "property damage" included in the "products-completed operations hazard".  For "bodily injury" or "property damage" included in the "products-completed operations hazard" the "bodily injury" or "property damage" occurs during the policy period or during the "extended products-completed operations period.

2. The following is added to **SECTION I– COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, Paragraph b.**:

4. And with respect to the "products-completed operations hazard" only, the "Designated Project Site" has been issued a final certificate of occupancy prior to the expiration of the policy period.

3. **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY, 1. Insuring Agreement**, **Paragraph b**. is deleted and replaced with the following:

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed at the, or related to the business of, the "Designated Project Site" and takes place during the policy period.

4. **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, **j., k.** and **l**. are herein deleted.

5. The following exclusion is added to **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**:

COMMERCIAL GENERAL LIABILITY
ASG 09 09 09 21

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

"Property damage" to personal property in the care, custody or control of any insured.

6.  The final paragraph of **SECTION III – LIMITS OF INSURANCE** is deleted and replaced with the following:

> The Limits of Insurance apply to the entire policy period, including the "extended products-completed operations period."

7.  The following paragraph is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

> Cancellation, non-payment of additional premium at audit or a failure to cooperate with the audit process will result in the automatic removal of coverage within the "extended products-completed operations period."

8.  **SECTION V – DEFINITIONS, 16. "Products-completed operation hazard"** is deleted in its entirety and replaced with the following:

The "products-completed operations hazard" shall include all "bodily injury" and "property damage" occurring at the "Designated Project Site" after a final certificate of occupancy has been issued for the "Designated Project Site."  Coverage under the "products-completed operations hazard" will not trigger for the "Designated Project Site" if a final certificate of occupancy is not issued prior to the expiration of the policy period.

The "products-completed operations" hazard may trigger where work may need service, maintenance, correction, repair or replacement, but where a final certificate of occupancy for the "Designated Project Site" has been issued.

9.  **SECTION V – Definitions** is amended to include the following:

1.  "Designated Project Site" means the project identified and described in the Schedule of this endorsement.

2.  "Extended products-completed operations period" means the period commencing on the date "products-completed operations" coverage is triggered under this Policy through any applicable statute of limitation or statute of repose that applies at policy inception.  The "extended products-completed operations period" shall not take effect if this Policy is cancelled for any reason or expires prior to the trigger of "products-completed operations" coverage.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 09 02 09 21**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WRAP-UP NAMED INSUREDS
# (ENROLLED CONTRACTORS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**    The following persons or entities shall be Named Insureds under this Policy:

Any "enrolled contractor" performing duties related to construction activity at the "Designated Project Site" listed within the Wrap-Up Amendatory endorsement attached to this Policy.  Unless otherwise stated by endorsement to this Policy, none of the following persons or entities are "enrolled contractors":

1. Vendors, suppliers, truck carriers, haulers, material dealers, delivery, hazardous waste haulers, environmental abatement contractors, crane owners, surveyors, architects or engineers of any type.
2. Manufacturers, fabricators, or any other organization performing activities outside of the "Designated Project Site" listed in the Wrap-Up Amendatory endorsement attached to this Policy.
3. Trimod Aileron Property, LLC (specific persons or entities to be identified by underwriter, if applicable).

"Enrolled Contractor" means:  Any contractor who has completed the appropriate enrollment documents and is approved in writing by the enrollment vendor to work on the jobsite.  The mere execution of a subcontract by a contractor and the general contractor is not enrollment and shall not, by itself, render a contractor an "enrolled contractor" under this Policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 09 03 09 20**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FIRST NAMED INSURED'S RIGHTS AND DUTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to **Section IV - COM-MERCIAL GENERAL LIABILITY CONDITIONS**:

**First Named Insured's Rights and Duties**

This Policy provides commercial general liability coverage as part of a Controlled Insurance Program.  The First Named Insured under this Policy is: Trimod Aileron Property, LLC**.**

It is agreed by all insureds that the First Named Insured has responsibilities for and will act on behalf of all insureds with respect to the following:

1. Changes/amendments to this Policy;
2. Premium payments;
3. Premium audits
4. QAQC compliance;
5. Wrap administration compliance
6. Receiving return premium;
7. Risk Management compliance
8. Giving or receiving notice of cancellation;
9. Claim notices; and
10. Claim information

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 09 15 05 21**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED PREMISES OPERATIONS COVERAGE – REPAIR WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

For the limited purpose of the coverage provided by this endorsement:

**SECTION I – COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Par. 1. Insuring Agreement** is amended to include the following:

**1.** We will pay those sums which a Named Insured becomes legally obligated to pay as damages for "bodily injury" or "property damage" taking place during "repair work" being performed by an "enrolled contractor" at the "Designated Project Site" within the "repair work period."

**SECTION III – LIMITS OF INSURANCE** is amended as follows:

The insurance provided by this endorsement is applicable to and shall erode the General Aggregate Limit of this Policy.  It remains subject to the Each Occurrence Limit included within the Declarations.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended as follows:

The insurance provided by this endorsement will not take effect if the Policy is canceled for any reason or coverage under the "products-completed operations hazard" is not triggered prior to the expiration of the policy period as defined by the Wrap-Up Amendatory Endorsement (ASG 09 09 01 21).

The following definitions are added to **SECTION V – DEFINTIONS**:

1. "Repair work" is work taking place during the "repair work period" to correct, repair or replace "your work" that was completed at the "Designated Project Site" prior to the expiration of the policy period.

2. "Repair work period" means a period of ten (10) years or that included within the applicable statute of repose (whichever is shorter), commencing from the date coverage under the "products-completed operations hazard" is triggered at the "Designated Project Site" as defined by the Wrap-Up Amendatory Endorsement (ASG 09 09 01 21).

The insurance provided by this endorsement does not apply to and shall not implicate coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

COMMERCIAL GENERAL LIABILITY
ASG 07 39 05 21

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CROSS SUITS LIABILITY - APPLICABLE TO PROPERTY DAMAGE ONLY - WITH EXCEPTION FOR DESIGNATED ENTITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverages – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

**Cross Suits**

Any claim made or "suit" brought by any Named Insured under this Policy against another Named Insured under this Policy for damages because of "property damage".

However, this exclusion shall not apply to any claim made or "suit" brought by any designated entity within the Schedule below against another Named Insured.

### SCHEDULE

| **Designated Entity**: |
| --- |
| **A. R. Mays Construction, Inc.; Trimod Aileron Property, LLC** |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 12 10 21**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – WHO IS AN INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  **SECTION II – WHO IS AN INSURED, Paragraph 2.** is deleted in its entirety and replaced with the following:

**2.**  Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business.

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1) (a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

Subparagraphs (a), (b) and (c) above do not apply to any "employees" who are "executive supervisors".

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

B.  **Section V – Definition**s is amended to include the following definitions:

1.  "Executive supervisor" means a person exercising supervisory control through job superintendents or foremen and whose title is an Executive Supervisor, Construction Executive, Construction Manager, Construction Superintendent or Project Manager for construction or erection of the "Designated Project Site".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

ASG 03 12 10 21          Includes copyrighted material of Insurance Services Office, Inc. with          **Page 1 of 1**
its permission.

**COMMERCIAL GENERAL LIABILITY**
**ASG 03 27 10 21**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE (PROJECT SPECIFIC AND WRAP-UP)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, the following is added to paragraph **4. Other Insurance** and supersedes any provision to the contrary:

This insurance is primary for any liability arising out of the "Designated Project Site" and shall apply before any other insurance, whether primary, excess or on any other basis, except for that included in subparagraphs **b.(1)(a) and b.(1)(b),** which is available to a Named Insured and upon which that Named Insured is listed as a Named Insured.

Where this Policy is primary insurance per the terms listed above, we will not seek contribution from other insurance for defense and indemnity.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**COMMERCIAL GENERAL LIABILITY**
**ASG 09 11 01 21**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GENERAL AGGREGATE LIMIT
# REINSTATEMENT ON 06/01/23

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following paragraph is added to **SECTION III – LIMITS OF INSURANCE:**

The General Aggregate Limit as defined by Paragraph **2.** of this Section and identified in **Item 5.** of the Commercial General Liability Declarations will reinstate on:

1) 06/01/2023

A separate General Aggregate Limit will apply to all "bodily injury" and "property damage" that occurs before 06/01/2023  and all "bodily injury" or "property damage" that takes place after 06/01/2023.

Under no circumstances will the Products/Completed Operations Aggregate Limit reinstate.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**ASG 09 11 01 21**          Includes copyrighted material of Insurance Services Office, Inc.          **Page 1 of 1**
with its permission.

**COMMERCIAL GENERAL LIABILITY**
**CG 24 53 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION) – AUTOMATIC

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART DESIGNATED SITES
POLLUTION LIABILITY LIMITED COVERAGE PART DESIGNATED SITES
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY DESIGNATED TANKS

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery against any person or organization, because of any payment we make under this Coverage Part, to whom the insured has waived its right of recovery in a written contract or agreement. Such waiver by us applies only to the extent that the insured has waived its right of recovery against such person or organization prior to loss.

POLICY NUMBER: **TI22PWUP-01481-01**                                    **COMMERCIAL GENERAL LIABILITY**
**ASG 03 25 05 21**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NOTICE OF CANCELLATION TO DESIGNATED ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE OF DESIGNATED ENTITIES

| |
|---|
| **Thorofare Asset Based Lending REIT Fund V, LLC, ISAOA, ATIMA** |

In the event of cancellation or non-renewal of the insurance afforded by this Coverage Part is issued to the Named Insured, we agree to concurrently mail prior written notice of cancellation to the person(s) or organization(s) shown in the Schedule above.

POLICY NUMBER: **TI22PWUP-01481-01**

**COMMERCIAL GENERAL LIABILITY
CG 20 10 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| **Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.** | **As listed on ASG 09 09 09 21 – Wrap-Up Amendatory Endorsement.** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**CG 20 10 12 19**                    © Insurance Services Office, Inc., 2018                    **Page 1 of 2**

POLICY NUMBER: **TI22PWUP-01481-01**

**COMMERCIAL GENERAL LIABILITY
CG 20 10 12 19**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

  **1.** Required by the contract or agreement; or

  **2.** Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

POLICY NUMBER: **TI22PWUP-01481-01**

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. | As listed on ASG 09 09 09 21 – Wrap-Up Amendatory Endorsement. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

**CG 20 37 12 19**          © Insurance Services Office, Inc., 2018          **Page 1 of 1**

POLICY NUMBER: **TI22PWUP-01481-01**

**COMMERCIAL GENERAL LIABILITY
CG 20 18 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name(s) Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| **Thorofare Asset Based Lending REIT Fund V, LLC, ISAOA, ATIMA.** | **As listed on ASG 09 09 09 21 – Wrap-Up Amendatory Endorsement.** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee or receiver and arising out of the ownership, maintenance or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

**CG 20 18 12 19**          © Insurance Services Office, Inc., 2018          **Page 1 of 1**